**WATSON RURAL WATER COMPANY, INC., Defendant–Appellant,**

v.

**INDIANA CITIES WATER CORPORATION, Plaintiff–Appellee,**

and

**Farmers Home Administration, Department of Agriculture, United States of America, Third Party Defendant Below.**

No. 88A01–8810–CV–00326.

Court of Appeals of Indiana, First District.

June 29, 1989.

Rehearing Denied Aug. 10, 1989.

---

Rebecca G. Looney, New Albany, Virgil E. Bolly, Sellersburg, for defendant-appellant.

Daniel W. McGill, Barnes & Thornburg, Indianapolis, Richard C. O'Connor, Wyatt, Tarrant, Combes & Orbison, New Albany, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Watson Rural Water Co. appeals the decision of the trial court entering summary judgment in favor of Indiana Cities Water Corporation, granting Indiana Cities a permanent injunction, and denying Watson Rural Water Company's counterclaims. We affirm.

## FACTS

Watson Rural Water Company (Watson) is a not-for-profit Indiana corporation that engages in water distribution in unincorporated areas of Clark County, Indiana. Watson's system was started and built with funds borrowed from the Farmers Home Administration (FmHA). Watson is a public utility serving approximately 1800 customers, and is regulated as to matters of rates and service by the Indiana Utility Regulatory Commission (the "Commission"). Watson does not have a franchise, indeterminate permit or certificate of public convenience and necessity authorizing Watson to provide water service within the City of Jeffersonville.

Indiana Cities Water Corporation (Indiana Cities) is an Indiana Corporation engaged in the water and sewer utility business in various locations in Indiana including the City of Jeffersonville in Clark County, Indiana. Indiana Cities is a public utility serving approximately 59,000 customers statewide. Indiana Cities is also regulated by the Commission and operates within the City of Jeffersonville pursuant to an indeterminate permit issued by the Commission to Indiana Cities' predecessor company on May 31, 1923.

The current controversy concerns which of these public utilities should provide water service to a certain tract of land which is now a part of the City of Jeffersonville. In January 1973, Watson made an unsuccessful attempt to obtain a certificate of public convenience and necessity to serve this area of Jeffersonville, Indiana. Indiana Cities was granted permission to intervene in the action by the Commission. The Commission held a formal evidentiary hearing on Watson's petition on February 1, 1974. After hearing witnesses on both sides and evaluating the evidence presented, the Commission issued an order denying Watson's petition on March 22, 1974. The Commission held that Indiana Cities had the right to service Jeffersonville including the newly annexed areas.

In late 1985, Watson began providing water service to the Jeffersonville Hospital for construction purposes and continued to provide water service to the hospital throughout this litigation. On December 13, 1985, Watson again attempted to obtain a certificate of public convenience and necessity for a certain tract of land including the hospital site located within the City of Jeffersonville. Hearings were held on

Watson's petition on March 18 and 25 and on April 21, 1986. Numerous witnesses testified and other evidence was admitted. On November 26, 1986, the Commission issued an order again denying Watson's petition. The commission found that: (1) Watson had the requisite ability to adequately serve the public in the requested areas; (2) Indiana Cities was ready, willing and able to provide adequate service to the City of Jeffersonville, including annexed areas, at the present time and in the years ahead; (3) Watson's initiation of water service to the hospital without a valid franchise or indeterminant permit and without authority from this commission is contrary to the public interest and reflects unfavorably upon Watson's ability to provide utility service; (4) if permitted, Watson's service to the hospital would result in Watson's other customers improperly subsidizing the costs of providing service to the hospital; (5) 7 U.S.C. § 1926(b) did not apply because the hospital site was not nor had it ever been part of Watson's service area; and (6) public convenience and necessity did not require that Watson provide water utility service to areas within the City of Jeffersonville. Watson did not appeal the Commission's denial of its petition. Despite the Commission's ruling, Watson continued to supply the hospital with water service.

On February 6, 1987, Indiana Cities filed its complaint seeking damages and a permanent injunction to enjoin Watson from continuing to provide water service to the hospital. Watson filed an answer to this complaint on February 26, 1987, admitting that it continued to provide water to the hospital, but claiming that it was authorized to do so under 7 U.S.C. § 1926(b). Watson also filed a counterclaim against Indiana Cities and sought to make the FmHA a third-party defendant.

On February 27, 1987, Watson sought to remove the case to the United States District Court for the Southern District of Indiana on the ground that Watson had a claim or right under federal law. The federal court sent the case back to state court. The case was venued to Washington Circuit Court on the motion of Indiana Cities. The

FmHA was dismissed as a third-party defendant on October 23, 1987.

On July 22, 1987, Indiana Cities moved for summary judgment as to liability, and requested a permanent injunction against Watson. After briefing by the parties and a hearing on the motion, the trial court granted summary judgment in favor of Indiana Cities against Watson as to Watson's liability for damages resulting from providing water utility service to the hospital. The trial court also granted a permanent injunction prohibiting Watson from providing service to the hospital, and entered summary judgment against Watson on all counterclaims filed against Indiana Cities. In entering summary judgment in favor of Indiana Cities the trial court gave *res judicata* effect to the November 23rd, 1986 order of the Indiana Utility Regulatory Commission which denied Watson a certificate of public convenience and necessity. From this decision Watson now appeals.

## ISSUES

1. Did the trial court err in granting *res judicata* effect to the November 23rd, 1986, order of the Indiana Utility Regulatory Commission?

2. Do the provisions of 7 U.S.C. § 1926(b) confer a right on Watson to provide water utility service to the Jeffersonville Hospital and other areas within the City of Jeffersonville?

3. Did the trial court err in entering summary judgment in favor of Indiana Cities on Watson's counterclaim?

## DISCUSSION AND DECISION

In reviewing a grant of summary judgment, our standard of review is well settled. We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of material fact exists, and whether the moving party is entitled to judgment as a matter of law. *Ayres v. Indian Heights Volunteer Fire*

*Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234; *Chambers v. Cent. School Dist.* (1987), Ind.App., 514 N.E.2d 1294, 1296; *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729, *trans. denied.*

*Issue One*

Watson's sole defense to Indiana Cities' claim for damages was that Watson, as a borrower from the FmHA, was permitted to serve the hospital without Commission authority by virtue of the provisions of 7 U.S.C. § 1926(b). The trial court in granting summary judgment in favor of Indiana Cities held that the Commission's prior determination that 7 U.S.C. § 1926(b) did not give Watson the right to provide water utility service to the hospital should be given *res judicata* effect and that, therefore, the doctrine of collateral estoppel barred subsequent litigation of the issue. Watson contends that the trial court erred in giving the Commission's order *res judicata* effect. We disagree.

■■■ The doctrine of administrative *res judicata* was recognized by the Court of Appeals of Indiana in *South Bend Federation v. National Educ. Ass'n* (1979), 180 Ind.App. 299, 389 N.E.2d 23. The two branches of *res judicata* are "estoppel by judgment" and "estoppel by verdict." [1] Estoppel by verdict or "collateral estoppel" is applicable when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different cause of action between the same parties or those in privity with them. *Id.*, 389 N.E.2d at 32. Because the concept of "claims" and "causes of action" are less important in administrative proceedings, most problems of *res judicata* in administrative law involve collateral estoppel. *Id.* To determine whether an administrative decision should bar or estop subsequent litigation the following

criteria should be considered: (1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency; (2) whether the agency was acting in a judicial capacity; (3) whether both parties had a fair opportunity to litigate the issues; and (4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal. *McClanahan v. Remington Freight Lines* (1988), Ind., 517 N.E.2d 390, 394. (In *McClanahan* the Supreme Court refused to give collateral estoppel effect to a prior administrative ruling because the parties did not have a full an fair opportunity to litigate the central issue.); *Cox v. Indiana Subcontractors Ass'n Inc.* (1982), Ind.App., 441 N.E.2d 222, 225 (In *Cox* the doctrine of collateral estoppel was found to be inapplicable because the Indiana Employment Security Division did not have the authority to determine complex contract cases.) Therefore, this court must evaluate these factors to determine whether or not the trial court properly gave *res judicata* effect to the Commission's prior ruling. After reviewing these four factors with respect to the administrative proceeding central to the present case, it is our opinion that the trial court did not err by invoking the doctrine of collateral estoppel and barring relitigation of the application of 7 U.S.C. § 1926(b). [2]

However, Watson argues that the Commission lacked jurisdiction to determine the service areas of the parties. Watson also argues that the Commission lacked jurisdiction to determine the applicability of 7 U.S. C. § 1926(b), and that this determination should not be given *res judicata* effect because the determination was not essential to the commission's decision to deny Watson a certificate of public convenience and necessity. Watson's final contention is

---

1. Estoppel by judgment takes place when a prior adjudication on the merits by a court of competent jurisdiction acts as a bar to subsequent action on the same claim between the parties or those in privity with them. *Shortridge v. Review Board* (1986), Ind.App., 498 N.E.2d 82, 89, n. 6; *South Bend,* 180 Ind.App. at 313, 389 N.E.2d at 32.

2. We note that the present case is somewhat unusual in that it involves the offensive use of collateral estoppel. As noted in Judge Shields' concurring opinion in *Hocket v. Breunig* (1988), Ind.App., 526 N.E.2d 995, 1001, n. 4, the offensive use of this doctrine may sometimes be problematic. However, it is our opinion that use of the doctrine offensively under the circumstances of this case is in no way unfair to the defendant corporation.

that the Commission's order created a "Catch 22" situation for Watson and that policy concerns mandate that *res judicata* not be invoked under such circumstances.

We first note that the Commission is authorized by statute to enforce the laws of Indiana relating to public utilities. Indiana Code section 8–1–2–115. Furthermore, permission to initiate duplicative service is barred under Indiana Code section 8–1–2–86(a) which reads:

> "(a) No license, permit, or franchise shall be granted to any person, copartnership, or corporation to own, operate, manage, or control any plant or equipment of any public utility in any municipality where there is in operation a public utility engaged in similar service under a license, franchise, or permit without first securing from the commission a declaration, after a public hearing, of all parties interested, that public convenience and necessity require such second public utility; provided, that any municipality may purchase, condemn, and operate, or construct and operate, a utility in such municipality for the purpose of transportation, production, transmission, delivery, sale, and furnishing of heat, light, water, and/or power to such municipality, and/or the public in and within six (6) miles of the limits of such municipality, without the consent of said commission, although there is operating in said municipality a public utility engaged in a similar service under a license, franchise, or indeterminate permit."

Indiana Cities provides water utility service to the City of Jeffersonville pursuant to an indeterminant permit. The hospital currently being serviced by Watson is now, and was at the time Watson initially sought permission to service the site, located within the City of Jeffersonville. Therefore, Watson was seeking to obtain a certificate of public convenience and necessity for an area already provided with water utility service. Clearly, the provisions of I.C. § 8–1–2–86(a) cloak the Commission with the jurisdiction to decide issues bearing

upon the propriety of granting Watson a certificate under such circumstances.

Furthermore, Indiana Cities and Watson both claimed the right to provide water utility service to the hospital and other areas.[3] Only the Commission has the right to determine a dispute concerning which of two public utilities has the right to serve a particular area. *Decatur County Rural Elec. Membership Corp. v. Public Service Co.* (1971), 150 Ind.App. 193, 198, 275 N.E.2d 857, 862, *trans. denied.* In order to determine which water utility company had the right to serve the disputed areas, it was necessary for the commission to evaluate Watson's claim that it was entitled to serve the disputed sites pursuant to the provisions of 7 U.S.C. § 1926(b). That statute reads:

> "The service provided or made available through any such association shall not be curtailed or limited by *inclusion of the area served by such association within the boundaries or any municipal corporation* or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to *continuing to serve the area served by the association at the time of the occurrence of such event.*"

The statute protects Watson only if the disputed tracts were within the area served by Watson at the time the hospital site was annexed. Therefore, the commission was required to determine Watson's service area in order to rule on the applicability of 7 U.S.C. § 1926(b). As issues which had to be resolved in order for the Commission to determine whether Indiana Cities or Watson had the right to serve the hospital and other areas, these issues were properly within the Commission's jurisdiction.

Finally, even if these determinations were outside the Commission's jurisdictional scope, Watson cannot now be heard to complain about that fact. "A party cannot

---

**3.** The Commission is now statutorily empowered to determine territorial disputes between all water utilities. *See* Indiana Code section 8–1–2–86.5.

assume inconsistent or mutually contradictive positions in the same or successive litigation." *Riverview Health Care v. Wright* (1988), Ind.App., 524 N.E.2d 321, 325. "It has long been the law of this state that one who procures a court to act wrongly, even where the action is beyond the court's jurisdiction, is estopped to then claim the lack of jurisdiction as a defense to the result obtained." *Id., quoting Lyon v. Lyon* (1977), 174 Ind.App. 597, 598, 369 N.E.2d 649, 650. Watson raised the issue of the applicability of 7 U.S.C. § 1926(b) in the proceedings before the Commission, and, as previously stated, determining the service areas of the utilities was necessary to determine the applicability of 7 U.S.C. § 1926(b). Therefore, Watson was estopped from claiming in a subsequent court proceeding that the Commission was without jurisdiction to decide these issues.[4]

Watson next argues that the doctrine of *res judicata* should not have been invoked in the present case because the Commission's determination that 7 U.S.C. § 1926(b) failed to give Watson the right to serve the hospital and other disputed sites within the City of Jeffersonville, was not essential to the Commission's decision to deny Watson a certificate of public convenience and necessity. Watson correctly notes that collateral estoppel does not apply unless the determination was essential to the decision. *Ray v. Indiana and Michigan Elec. Co.* (7th Cir.1985), 758 F.2d 1148, 1150. However, Watson is mistaken in his assertion that a determination as to the applicability of 7 U.S.C. § 1926(b) was nonessential to the Commission's ultimate decision. Clearly, had Watson's service area been found to extend as far as the hospital and other areas within the City of Jeffersonville prior to annexation, the provisions of 7 U.S.C. § 1926(b) would mandate that the Commission recognize Watson's statutory right to provide those areas with water utility service, and grant Watson's request for a certificate of public convenience and necessity. We hold, there-

fore, that a determination as to the applicability of 7 U.S.C. § 1926(b) was essential to the Commission's decision and that the trial court did not err in applying the doctrine of *res judicata.*

Watson's final argument against applying the doctrine of *res judicata* in the present case is that such an application would violate public policy. More specifically, Watson argues that the Commission's ruling creates a "Catch 22" situation for the water utility and that, therefore, *res judicata* should not be invoked. According to Watson, it has no way to protect its service area through the Indiana Utility Regulatory Commission because if it waits until annexation of rural areas and then seeks to obtain a certificate of convenience and necessity, the areas will fall under the indeterminate permit issued to Indiana Cities. Furthermore, if Watson seeks a certificate of public convenience and necessity prior to annexation, the Commission will have no authority to grant a certificate.

While Watson accurately characterizes the Commission's role in these proceedings, it mischaracterizes the essence of its own purpose in these proceedings. Watson was not attempting to "protect" its service area in seeking a certificate of public convenience and necessity in the present case. Rather, Watson was attempting to expand its operations. In doing so Watson tried to use the protective shield provided by 7 U.S.C. § 1926(b) as a sword to cut out a new market for its services. If Watson were truly attempting to protect its service area, the provisions of 7 U.S.C. § 1926(b) would mandate that the Commission grant Watson a certificate of public convenience and necessity. Therefore, Watson is not caught in a "Catch 22" situation and public policy concerns do not bar the application of the doctrine of *res judicata* in the present case.

*Issue Two*

Watson next contends that the Commission erred in determining that 7 U.S.C.

---

4. Citing 24 I.L.E., *Public Service Commission,* Section 12, Watson also argues that as a fact finding administrative tribunal the Commission may not interpret statutes further than to deter-

mine its powers and functions thereunder. It is our opinion that the Commission's determination fell within this limitation.

§ 1926(b) did not confer Watson the right to service the hospital and other disputed areas within the City of Jeffersonville. However, because the doctrine of *res judicata* barred the trial court from addressing this question, the present appeal is an improper vehicle for seeking review of this question. Nonetheless, it is our opinion that the Commission's determination was correct.

■ Specifically, Watson argues that the trial court erred in determining that the hospital and other disputed areas were not within Watson's service area. First Watson urges this court to consider the determination of the service area a question of federal law. This we will not do. The question of what constitutes a utility's service area is a factual determination properly made by the state's regulatory commission. *See Decatur County Rural Elec.*, 150 Ind.App. at 200, 275 N.E.2d at 862.

Watson then argues that even if the composition of the service area is a question of state law, the Commission erred in determining that the hospital fell outside Watson's service area. Watson correctly notes that 7 U.S.C. § 1926(b) has been held to be unambiguous by the federal courts. *Glenpool Utility Services v. Water Dist. No. 2* (10th Cir.1988), 861 F.2d 1211, 1213; *City of Madison v. Bear Creek Water Ass'n Inc.* (5th Cir.1987), 816 F.2d 1057, 1059. The purpose in enacting 7 U.S.C. § 1926(b) was two-fold: to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost; and to safeguard the viability and financial security of such associations and loans by the FmHA to such associations by protecting those associations from the expansion of nearby cities and towns. *Madison*, 816 F.2d at 1060. Furthermore, the statute should be broadly interpreted to achieve these ends. *Jennings Water, Inc. v. City of North Vernon* (S.C.Ind.1988), 682 F.Supp. 421, 425.

Watson argues that given a broad interpretation of 7 U.S.C. § 1926(b), "service area" should be defined as applying not only to actual customers being served, but also to potential customers in the area. In support of this contention Watson cites to the express terms of the statute which prohibit the curtailing of "the service provided or made available" through a federally funded rural water association. Watson also cites to the case of *Glenpool Utility* in which the Tenth Circuit Court of Appeals held that the district court correctly found that the rural water company's service area included not only the areas actually served, but also, areas to which service "was made available" by virtue of the utility's line adjacent to the property and its responsibilities to applicant within its territory.[5] *Glenpool Utility* 861 F.2d at 1214. The rural water company's "territory" included the disputed area pursuant to annexation in 1967.

■ Unlike the rural water association in *Glenpool*, Watson's territory did not include the hospital and other disputed areas prior to the time Watson sought a certificate of public convenience and necessity. The prior annexation of the disputed territory in *Glenpool* is an important distinguishing feature in that case. It is our opinion that absent some prior territorial claim or proceeding, the mere existence of a transmission line will not cause all areas accessible from that line to be enveloped within the rural water utility's service area.

As so aptly stated by the Commission itself:

"Watson would like to define its service area to include any customers within striking range of its transmission mains. However, the evidence shows that at least four water utilities, Indiana Cities, Watson, Riverside Water Corporation, and the Town of Sellersburg Water Development, take their water supply from the same general area on the Ohio River. All of these water companies have trans-

---

5. The district court went on to hold that 7 U.S.C. § 1926(b) was applicable, but that the provisions of that statute did not give the rural water association in question an exclusive right to service the disputed area. *Glenpool Utility* 861 F.2d at 1214. The district court's decision was reversed on appeal and remanded for further proceedings. *Id.* at 1217.

mission lines leading from the source of supply to their distribution areas. This does not make every area through which these transmission lines pass a part of the utility's service area."

Record at 161.

The Commission did not err in determining that despite the fact that Watson was able to serve the hospital and other disputed areas, these areas were not within Watson's service area. Having determined that the disputed areas were outside Watson's service area, the Commission correctly held that 7 U.S.C. § 1926(b) was inapplicable to the present case.

*Issue Three*

Watson's final contention is that the trial court erred in granting summary judgment to Indiana Cities on Watson's counterclaims. Watson correctly notes that pleadings must be liberally construed. Indiana Rules of Procedure, Trial Rule 8(F). Watson then argues that a "claim should only be dismissed for failure to state a claim if it appears beyond doubt that the claimant can prove no set of facts in support of the claim that would entitle him to relief." Appellant's brief at 37. According to Watson, the language of its counterclaim was sufficient to create a cause of action against Indiana Cities for the tortious interference with a business relationship.

Watson is mistaken. We first note that Watson urges us to adopt an erroneous standard of review. Watson's counterclaims were not dismissed pursuant to an Indiana Rules of Procedure, Trial Rule 12(B)(6) motion to dismiss. Rather, summary judgment was entered against Watson on its claim according to Indiana Rules of Procedure, Trial Rule 56.

In interpreting the parallel federal rule of procedure, the Supreme Court articulated the standard of review to be applied to the claims of a non-moving party possessing the burden of proof:

"In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 272. Therefore, in order to defeat Indiana Cities' motion for summary judgment, Watson was required to establish each element essential to a claim of tortious interference with a business relationship. In the State of Indiana, an element necessary to prove this cause of action is that a defendant acted illegally in achieving his end. *Johnson v. Hickman* (1987), Ind.App., 507 N.E.2d 1014, 1019, *trans. denied; Biggs v. Marsh* (1983), Ind. App., 446 N.E.2d 977, 983, *trans. denied; Ft. Wayne Cleaners and Dyers Ass'n v. Price* (1956), 127 Ind.App. 13, 19, 137 N.E. 2d 738, 742. In its counterclaim Watson essentially contends that Indiana Cities' public representations, that it, rather than Watson, had the right to provide water utility service to the hospital and other disputed areas, constituted interference with Watson's business relationships. Such representations made in good faith, simply do not constitute illegal acts sufficient to support a claim of tortious interference with a business relationship. Furthermore, insofar as Indiana Cities representations were made within the context of litigation, such representations are privileged and will not serve as a basis for liability. *Briggs v. Clinton County Bank and Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 997, *trans. denied.* Therefore, Watson failed to establish an element necessary to its claim and the trial court properly entered summary judgment against Watson on this

claim.[6]

Affirmed.

ROBERTSON and STATON, JJ., concur.

---

**6.** Watson filed two claims against Indiana Cities, summary judgment was entered against Watson on both claims. Watson's first claim for damages was based on its "right" to provide the disputed areas with water utility service as stated in 7 U.S.C. § 1926(b). Having previously determined in this opinion that no such "right" accrued to Watson under the provisions of 7 U.S.C. § 1926(b), we now hold that summary judgment was properly entered against Watson on this claim.