**LE–AX WATER DISTRICT, Plaintiff,**

v.

**CITY OF ATHENS, OHIO, Defendant.**

### No. 00CV1328.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 28, 2001.

---

Orla Ellis Collier, III, Benesch Friedlander Coplan & Aronoff, Columbus, OH, for plaintiff.

Mark L. Belleville, Calfee Halter & Griswold, Columbus, OH, for defendant.

### OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Plaintiff's Motion for Summary Judgment. The Defendant, the City of Athens, Ohio, filed a Cross Motion for Summary Judgment, and each party filed a Reply. Jurisdiction lies under 7 U.S.C. § 1926(b) of the Consolidated Farm and Rural Development Act of 1961.

For the following reasons, the Court **GRANTS** the Plaintiff's Motion for Summary Judgment.

## II. FACTS AND PROCEDURAL HISTORY

The Plaintiff, Le–Ax Water District ("Le–Ax"), is a regional water district, as defined by Ohio Revised Code § 6119. Le–Ax owns and operates a water treatment and distribution system that operates in Athens, Hocking, Vinton, and Meigs Counties, Ohio. Before its creation, Le–Ax was organized as a rural water district. In 1980, Le–Ax was created pursuant to Ohio Rev.Code § 6119 after filing a Petition with the Athens County Court of Common Pleas. As a regional water district, the Plaintiff is an independent political subdivision of the State of Ohio, with all the rights, duties, and privileges that are provided by Ohio Rev.Code § 6119.

The Petition that brought about the creation of Le–Ax described its territory, and the Order granting Le–Ax's Petition specified that the Water District was to cover the area described in the Petition. The Plaintiff's water distribution system includes a main transmission along State Route 682, which borders the City of Athens on the northwest side. The main transmission, which is connected to numerous distribution lines, has made water service available along State Route 682 since the Plaintiff's creation in 1980, and prior to 1980 through its predecessor.

Because Le–Ax was organized as a rural water district, it was able to assume the indebtedness of its predecessor to the Department of Agriculture. As a result, Le–Ax has been indebted to the Department of Agriculture since its inception. Before it was to retire its previous debt, Le–Ax incurred its current indebtedness. Specifically, the current indebtedness arose from the Plaintiff's sale and assignment of water revenue bonds to the Rural Economic and Community Development Service ("RECDS"), formerly the Farmers Home Administration ("FmHA"), pursuant to a Trust Agreement dated February 26, 1997. The bonds were issued in the principal amount of $6,844,000, at 4.5% interest. The amortization period commenced on February 1, 1998, and will terminate on February 1, 2037. To secure the debt, Le–Ax pledged all of its water service revenues, present and future. According to the Defendant, the City of Athens, Ohio ("City of Athens"), Le–Ax is currently attempting to acquire additional funds that would keep it indebted beyond 2037. In addition to the bonds that created the indebtedness, Le–Ax has been issued grants totaling $4,206,000.

University Estates, Inc. ("UE"), owns and desires to develop approximately 825 acres of property, located just north of, and contiguous with, the City of Athens. The proposed development would be commercial and residential, and would include a golf course and approximately 800 houses. According to the Defendant, UE would like to have the water service for the Proposed Development provided by the City of Athens' system, and the City of Athens wishes to provide that service. On October 16, 2000, the City of Athens, by an ordinance adopted by its City Council, authorized a development agreement with UE, under which the City would annex the area where the proposed development was to be located, and would provide water services to the area. According to the Plaintiff, the proposed development is to be located in an area that lies along State Route 682, where Le–Ax currently has water service lines and nearby water storage facilities.

The Plaintiff asserts that it has sufficient capacity to serve the proposed development area. Le–Ax has an eight-inch main along State Route 682, which is immediately adjacent to the University Estates site. Le–Ax also has a two-inch water service line that connects the main and currently serves nearby customers. Furthermore, Le–Ax has ancillary facilities that currently exist to serve the immediate area, including one water storage tank with a capacity of 650,000 gallons and another with a capacity of 370,000 gallons. The Plaintiff's water treatment plant has a capacity to produce 2.8 million gallons per day (MGD) of treated water. Le–Ax has an immediate surplus capacity in the eight-inch main transmission line to provide be- tween 430,000 and 561,000 gallons of water per day, well more than the 220,000 gallons per day (.22 MGD) that is expected will be needed to meet the development's full demand upon completion of the University Estates project.[1]

Le–Ax does not currently serve the specific site of the UE project. Currently, no water provider serves that site because it remains undeveloped. The proposed development site also lies outside of the area described in the Petition that gave rise to Le–Ax's creation. Specifically, according to a surveyor hired by the Defendant, the proposed development is about 1400 feet from the nearest point that is within the water district's boundaries. Additionally, the proposed development area was not part of Le–Ax's service area when it applied for loans from the Department of Agriculture. Le–Ax has not taken any formal action to change its boundaries to include the Proposed Development area.

On November 11, 2000, the Plaintiff filed a Complaint with this Court, alleging that the proposed water supply by the Defendant City of Athens to the UE development will curtail or limit the supply of water by the Plaintiff to that area in violation of 7 U.S.C. § 1926(b). It claims that, because the expected demand of the UE development is .22 MGD, with a revenue of $350,000 annually, Le–Ax will lose that amount due to the alleged violation. In its Complaint, the Plaintiff seeks declaratory and injunctive relief. The parties have filed cross-motions for summary judgment.

### III. STANDARD OF REVIEW

In evaluating cross-motions for summary judgment, courts should " 'evaluate

---

1. The Defendant contests the Plaintiff's claim that it currently has the necessary facilities to meet the Proposed Development's needs. The Defendant asserts that Le–Ax may need to run a separate line to one of its tanks to meet the development's needs because the eight-inch main would be insufficient. The Defendant has conceded, however, that this is not a genuine issue of material fact.

each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party.'" *Bakery & Confectionary Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 958 (6th Cir.1998) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994)). Significantly, a case is not necessarily appropriate for resolution at summary judgment simply because both parties have moved for summary judgment. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir.2001). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univs.)*, 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. *Taft Broad.*, 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## IV. ANALYSIS

### A. Availability of Services Under § 1926(b)

Pursuant to the Consolidated Farm and Rural Development Act of 1961, 7 U.S.C. § 1926(a), the Secretary of Agriculture is authorized to make or insure loans or grants to rural water associations for the development, use, and control of water to rural areas. *See* 7 U.S.C. § 1926(a). Section 1926(b) provides, in relevant part:

> The service provided *or made available* through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan. . . .

7 U.S.C. § 1926(b) (emphasis added). The protection granted to rural water associations by 7 U.S.C.1926(b) should be construed broadly. *Wayne v. Village of Sebr-*

*ing,* 36 F.3d 517, 527–28 (6th Cir.1994) (citations omitted).

■ The protection of § 1926(b) applies whenever three elements are met: (1) the entity seeking protection is a rural water association; (2) the rural water association is indebted to FmHA (now RECDS); and (3) the rural water association provides or makes service available to the geographical area in question. *Adams County Reg'l Water Dist. v. Vill. of Manchester, Ohio,* 226 F.3d 513, 517 (6th Cir.2000) (citing *Lexington–South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 234 (6th Cir.1996)). It is undisputed that the Plaintiff satisfies the first two of the three threshold requirements for § 1926(b) protection. Le–Ax is a rural water association, and it is indebted to RECDS. Therefore, the Court's analysis will focus on whether the Plaintiff has satisfied the requirement of serving or making service available to the geographic area in question.

Whether the Plaintiff satisfies the third threshold requirement for § 1926(b) protection turns upon whether Le–Ax "makes service available" to the proposed UE development area within the meaning of the statute. The Court's conclusion on that issue rests on the "pipes in the ground" test, set forth in *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow,* 191 F.3d 1192 (10th Cir.1999).

In *Sequoyah County,* the Tenth Circuit held that a water association, in fact, "makes service available" if it has "proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." *Sequoyah County,* 191 F.3d at 1203 (citing *Bell Arthur Water Corp. v. Greenville Utilities Comm'n,* 173 F.3d 517, 526 (4th Cir.1999), for the proposition that the "pipes in the ground" test is essentially an inquiry into whether a water association

has the capacity to provide service to a given customer); *see Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2,* 861 F.2d 1211, 1214 (10th Cir.1988) (upholding the district court's finding that the water district "made service available" by virtue of its line within fifty feet of the property in question, along with its obligation to provide service to those within the property who made application for such service); *North Shelby Water Co. v. Shelbyville Mun. Water and Sewer Comm'n,* 803 F.Supp. 15, 20–22 (E.D.Ky. 1992) (granting protection to the water association where it had not actually provided service to the disputed areas, but made service available by virtue of lines that ran through, or adjacent to, the areas). Because Le–Ax has pipes in the ground with which it can make service available to the UE development area, it satisfies this test. The Court, therefore, finds that Le–Ax makes service available to the proposed UE development area within the meaning of § 1926(b).

### B. Limitations Under § 1926(b)

Contrary to the Court's findings, the Defendant has argued, on various grounds, that the Plaintiff falls outside the scope of statutory protection of its right to provide water service to the proposed development. As a general matter, the Defendant argues that § 1926(b) was intended to be used by rural water associations as a shield, not a sword, and Le–Ax is attempting to use it as a sword. Specifically, the Defendant claims that § 1926(b) was not intended to, and does not, grant water districts an exclusive right to service a site that: (a) is outside of the district's state-law defined area; (b) is wholly unrelated to any federal indebtedness the water district has incurred; (c) the water district has no legal obligation to serve; and (d) has never been served by the water district before. The Defendant also argues

that to read § 1926(b) to grant as broad protection as is claimed by the Plaintiff would violate the Tenth Amendment. The Court will examine each of these arguments in turn.

■ At the outset, the Court clarifies that its holding is limited to the specific facts currently before the Court. The Court agrees with the Defendant that the federal statute was not created to give rural water districts predatory rights. *See City of Wetumpka v. Central Elmore Water Auth.*, 703 So.2d 907, 913 (Ala.1997) (agreeing with the trial court's finding that the statute is intended to "protect associations from outside aggression, not to protect them in their own attempts to engage in aggression toward other public water systems"); *Watson Rural Water Co. v. Indiana Cities Water Corp.*, 540 N.E.2d 131, 137 (Ind.App.1989) (recognizing that the water district was not entitled to a certificate of public convenience and necessity under state law because it was trying to use § 1926(b) as a "sword to cut out a new market for its services," rather than as a protective shield). Thus, the Court emphasizes that the gravamen of its holding is that the Plaintiff's distribution lines that make service available to the UE development are already in place, and have been in place since the Plaintiff's creation over twenty years ago—long before the City of Athens was interested in the right to distribute water to the region in question. Were the facts otherwise, the Court might draw a different conclusion.[2]

### C. "Making Service Available" Outside the Service Area

The Defendant notes that the proposed development area is outside Le–Ax's territory as that territory was defined in the Petition that gave rise to Le–Ax's creation. Thus, the Defendant argues that the Plaintiff has no right to § 1926(b) protection for areas that are outside of its service area. Specifically, the Defendant claims that to grant § 1926(b) protection of Le–Ax's rights to serve the proposed development area under these circumstances would be to allow the water district to circumvent the statutory requirements for expanding its territory. The Defendant also argues that the "pipes in the ground" test only applies when the area for which the right to serve is sought to be protected lies within the District's territory. *See Lexington–South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 232 (6th Cir.1996) (finding that the "pipes in the ground" test applied to protect the water district when the city extended water distribution facilities over a portion of the water district's territory, as it had been defined by Kentucky law).

■ First, the Court recognizes that the "area served" by a water district for purposes of § 1926 is determined by state law. *See Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1201 n. 7 (10th Cir.1999) (assuming that certain customers were within the Plaintiff's territory, as such territory is defined by state law). This Court believes, however, that under Ohio law, although

---

**2.** Because the Plaintiff's water line has been in place for such an extensive period of time that it is clear that it made service available to the proposed development area long before the City of Athens became interested in the property, it is unnecessary for the Court to determine exactly at what point the water district would be relying on § 1926(b) to aggressively expand its service area rather than to protect the service area already established. The Court hypothesizes, however, that if a federally-indebted water district and a competing water distributor, including a city, were to enter a new territory and lay pipes in that territory at the same time, the Court would have difficulty concluding that the rural water district had any distribution rights superior to those of its competitor.

there are certain statutory procedures for officially changing the information in the Petition, Ohio statutes do not require a district to file a petition with the state court to approve extension of water services outside the district's original boundaries. Rather, the authority to provide services outside the original boundaries is inherent in the language of Ohio Rev.Code § 6119.01, which reads in relevant part:

Any area situated in any unincorporated part of one or more contiguous counties or in one or more municipal corporations, or both, may be organized as a regional water and sewer district in the manner and subject to the conditions provided in Chapter 6119 of the Revised Code, for either or both of the following purposes: (A): To supply water to users within *and without* the district. . . .

OHIO REV.CODE § 6119.01 (emphasis added).

■ Second, the Court finds that, because Le–Ax has satisfied the "pipes in the ground" test, as discussed above, Le–Ax has a right under Ohio law to serve or to make service available to the Proposed Development area, regardless of the fact that the area lies outside its territory, as that territory was described in the Petition. The plain language of Ohio Rev. Code § 6119.01 indicates that the water district has plenary authority to provide water service even outside of its political boundaries.

■ Third, the Court finds that its analysis with regard to the "pipes in the ground" test applies irrespective of the fact that the disputed area falls outside of Le–Ax's territory. The Court recognizes the holding in *Watson Rural Water Co.* that not every area accessible by the water district's transmission lines is a part of a utility's service area. *Watson Rural Water Co., Inc. v. Indiana Cities Water Corp.*, 540 N.E.2d 131, 138 (Ind.App.1989) (hold-ing that the disputed areas were not within the service area of the water association, despite the existence of a transmission line from which the areas were accessible, absent some prior territorial claim or proceeding). *Watson Rural Water Co.*, however, is distinguishable on the basis that Ohio law does not require as much of water associations as does the Indiana law under which that case was decided. Ohio law, unlike Indiana law, does not require a water district to obtain a certificate of public convenience and necessity from the Public Utilities Commission prior to providing service to particular area. Also, the plain language of the Ohio statute, Ohio Rev.Code § 6119.01, indicates that water associations do, in fact, have authority and, therefore, a right, to provide water services to areas outside of their territory. Accordingly, the Court finds that where a water association has a right under state law to provide services to a particular area, that right is protected by § 1926(b) if the water association meets the threshold requirements of the federal statute.

### D. "Service Area" and Legal Obligation to Provide Service

■ The Defendant argues that, absent a legal obligation to provide water, Le–Ax does not have an exclusive right to service the proposed development area. The Defendant relies on *Lexington–South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230 (6th Cir.1996), and *Bell Arthur Water Corp. v. Greenville Utilities Comm'n*, 173 F.3d 517 (4th Cir.1999), for the proposition that if a water district has a legal obligation to provide service in a particular area, then the area is within the district's "service area." Specifically, the Defendant reads the following sentence as indicating that a water district must have a legal obligation to provide service for a

particular territory to be within its service area: "[W]e look to the law governing the way in which a water district *must provide* service to potential customers to determine whether Lexington South Elkhorn has provided or made service available to the disputed area." *Lexington–South Elkhorn Water Dist.*, 93 F.3d at 235 (emphasis added). The Defendant bases its reliance on *Bell Arthur Water Corp.* on the fact that the Fourth Circuit found that a particular area was not within the water district's service area when the district was not legally obligated to serve the area. *See Bell Arthur Water Corp.*, 173 F.3d at 526 ("Even if [the water district] had an adequate facility in [the area], it did not have a statutory duty to provide service to [the area]."). The Defendant accordingly asserts that because Le–Ax does not have a legal obligation to provide service anywhere outside its territory, including the UE development area, Le–Ax does not have the exclusive right to provide service to the Development.

 A water district must have a legal right, under state law, to provide service to a disputed area for § 1926(b) protection to apply. *See Lexington–South Elkhorn Water Dist.*, 93 F.3d at 238 (recognizing that the water district lacked the certificate of public convenience and necessity that authorized it to provide service under Kentucky law, but basing its decision on the fact that the water district lacked adequate facilities that would have enabled it to make service available to the disputed area). The Court believes, however, that a legal duty is not required for the protection to apply. In *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow,* 191 F.3d 1192 (10th Cir.1999), the Tenth Circuit noted:

> The distinction between a legal *duty* to provide service and a legal *right* to provide service is crucial because, in our view, the latter is always required. Without a right to provide service arising from state law, a water association would be unable to assert its entitlement to protection from § 1926(b) in the first instance because the association would not legally have "provided or made available" any service.

*Id.* at 1202 n. 8 (citations omitted). Although courts have granted § 1926(b) protection where there has been a legal duty to serve, such rulings were based on the courts' findings that having a legal duty was equivalent to making service available. Here, however, Le–Ax actually makes service available to the Proposed Development area, and has a right under Ohio law to do so. Therefore, the Court finds that the Plaintiff's right to distribute water to the Proposed Development without competition from the Defendant is protected by § 1926(b), despite the fact that it is not legally obligated to provide water service to the area.

In drawing this conclusion, the Court finds that the Defendant erroneously relied on both *Lexington–South Elkhorn Water Dist.* and *Bell Arthur Water Corp.* First, as to *Lexington–South Elkhorn*, the Defendant seems to mistake the Sixth Circuit's discussion of a state law right for a discussion of a state law obligation. In *Lexington–South Elkhorn*, the Sixth Circuit noted that the water district lacked the *authority* under state law to provide service because it lacked the Certificate of Convenience and Necessity that Kentucky requires. It was on this basis that the court found that the water district could not have "made service available," not on the basis that Kentucky had not *obligated* the water district to provide service. *See Lexington–South Elkhorn Water Dist.*, 93 F.3d at 235–38 (also relying on the fact that the water district did not have the water pipes in place that it

would have needed had it obtained the proper certificate). *But see Bell Arthur Water Corp.*, 173 F.3d at 526 (asserting that the Sixth Circuit in *Lexington–South Elkhorn* actually found that "making service available" requires a showing of a state law duty to serve an area, coupled with nearby facilities to provide the service).[3] Le–Ax, however, apparently has done all that is required by Ohio law to authorize it to provide water service to the area in question.

Second, as to *Bell Arthur*, the Fourth Circuit looked to whether the water district was obligated to provide service under state law only after determining that the district did not have the capacity to provide service to the area in question, and therefore, did not *actually* make service available. *Bell Arthur Water Corp.*, 173 F.3d at 525–26. In this context, it seems that the court was merely looking to a statutory obligation as an alternative to finding that service was, in fact, available to the area in question.

**E. Proposed Development is Unrelated to Le–Ax's Federal Indebtedness**

 Section 1926(b) is intended, in part, to protect the security that is provid-ed for the loan from the Department of Agriculture. *See North Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 915 (5th Cir.1996) (stating that protecting the financial security of the water associations, and thereby, the government's loans, was one of two purposes behind § 1926(b), the other being to encourage rural development); *see Scioto County Reg'l Water Dist. No. 1 v. Scioto Water Inc.*, 103 F.3d 38, 42 (6th Cir.1996) (holding that § 1926(b) protection did not apply when the water district had repurchased its bonds from the government to cancel its debt, so the security of the loans was no longer an issue). The Defendant, therefore, argues that, because the area of land for the Proposed Development was not a part of Le–Ax's loan transaction with the Department of Agriculture, the government's security could not be jeopardized by a refusal to grant § 1926(b) protection in these circumstances. The Defendant contends that the City's provision of water to the Proposed Development area would in no way disrupt Le–Ax's present services to its customers, and would, therefore, not infringe Le–Ax's ability to use its revenues to continue repaying the RECDS loan.[4]

---

**3.** Although the Fourth Circuit reads *Lexington–South Elkhorn* to require a showing of a duty under state law, it cites as support for that proposition the fact that the Sixth Circuit looked to the proximity of water lines to the disputed area because Kentucky law *requires* water service providers to obtain a state-issued certificate and then make certain extensions of water service lines to serve customer requests. This Court reads the Sixth Circuit's discussion of Kentucky's requirements differently than the Fourth Circuit. First, although the Certificate was required for water districts to provide service, the certificate merely gave them the authority, not the obligation, to provide such service. Second, this Court recognizes that once they put pipes in the ground pursuant to such a certificate, Kentucky water districts have certain duties to provide service. The Sixth Circuit's ruling that the water district did not make service available, however, was not based entirely on the fact that the water district lacked the authority to provide service because it lacked the required certificate. The *Lexington–South* court recognized that, even if the water district had the certificate, it did not have proper pipes in the ground that would have been required to perform its subsequent duties, and the water district, therefore, did not make service available. *See Lexington–South Elkhorn*, 93 F.3d at 235–38.

**4.** The City of Athens has also noted that the Department of Agriculture is not a party to these proceedings. The City argues that if losing this area would harm its security interest, then the Department would be in court asserting its interest in protecting Le–Ax. Le–Ax has responded to the Defendant's intima-

■ When the meaning of a statute is clear on its face, courts are required simply to enforce the statute as written, without looking behind the statute to its legislative history. *Chapman v. Higbee Co.,* 256 F.3d 416, 420 (6th Cir.2001) ("It is axiomatic that a court may not look to legislative history in order to interpret a statute that is clear on its face."). The Court finds that the plain language of § 1926(b) indicates that the protection it grants is absolute. Section 1926 neither requires that the encroachment actually threaten the government's security for its loan nor that the protection be limited to the particular geographic service area financed by the loan. *See City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057, 1059 (5th Cir.1987) ("However, it was Congress, and not this Court, that literally proscribed interference by competing facilities with the rural water authority 'during the term of said loan.' "); *Moore Bayou Water Ass'n, Inc. v. Town of Jonestown, Miss.,* 628 F.Supp. 1367, 1370 (N.D.Miss.1986) (finding that the plain language of the statute forbids any encroachment on the service provided by a rural water association as long as that association is indebted to the FmHA, without any condition that the encroachment actually impair the association's ability to repay the loan). As the Northern District of Mississippi clearly phrased the issue:

> Because this section affords protection only to those rural water associations indebted to the FmHA, it may be correct to infer that section 1926(b) was ultimately designed to protect an association's ability to meet its loan obligation. But this conclusion does not require or

permit this court to condition the prohibition contained in section 1926(b) upon a finding that a particular encroachment would necessarily result in a significant impairment. To follow this approach would allow the piecemeal erosion of the area served by a rural water association to occur as long as any single attempt would not result in a finding of significant impairment. Such result would clearly be contrary to the expressed intentions of Congress as contained in section 1926(b) and its legislative history.

*Moore Bayou Water Ass'n, Inc.,* 628 F.Supp. at 1370. The Court concurs with this analysis and, therefore, finds that § 1926(b) protects Le–Ax's right to provide water service to the proposed development area even though a denial of such protection would not directly impair the government's security.

### F. Tenth Amendment

■ The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. If Congress acts pursuant to powers delegated to it by the Constitution, then it does not violate the Tenth Amendment. Therefore, the determination of whether § 1926(b) violates the Tenth Amendment requires an examination into the powers pursuant to which Congress created the statute.

■ Congress created § 1926(b) pursuant to its powers under the Spending Clause of the United States Constitution.[5]

---

tion that the federal government would not deem this situation to fall within the purview of § 1926(b) by asserting that it was informed by the Marietta Regional Office of the RECDS that if the Plaintiff did not take action against the City of Athens to enjoin the violation of

§ 1926(b), the federal government could sue Le–Ax (i.e. to collect on its loan).

**5.** The Spending Clause states, in relevant part, that "Congress shall have the power To

*See Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2,* 861 F.2d 1211, 1215 (10th Cir.1988) (citing *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057, 1061 (5th Cir. 1987)). The Spending Clause gives Congress a wide degree of latitude in determining how to exercise its powers thereunder. *Glenpool Util. Servs. Auth.,* 861 F.2d at 1215; *see Bear Creek Water Ass'n, Inc.,* 816 F.2d at 1061 (asserting that Congress has "undoubtedly broad" powers under the spending clause). Legislation enacted pursuant to the Spending Clause is "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (citing *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Steward Machine Co. v. Davis,* 301 U.S. 548, 585–598, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)). Therefore, a state must voluntarily and knowingly accept the terms of the "contract" before Congress can validly legislate under the Spending Clause. *Id.* (declaring that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously," so that states can knowingly accept such conditions).

The Defendant claims that an interpretation of 7 U.S.C. § 1926(b) that provides protection to Le–Ax under these circumstances violates the Tenth Amendment. According to the Defendant, such an interpretation of § 1926 improperly interferes with powers that are reserved for Ohio and its citizens by allowing a federal statute to affect the demographics and municipal finances of political subdivisions in Ohio. Furthermore, the Defendant claims that such an interpretation would allow the federal statute to displace Ohio's commitment to municipal control of public utilities and annexation. *See Village of Lucas v. Lucas Local Sch. Dist.,* 2 Ohio St.3d 13, 442 N.E.2d 449, 450 (1982) (finding that certain amendments to the Ohio constitution placed jurisdiction over public utilities in the control of municipalities); *Smith v. Granville Twp. Bd. of Trustees,* 81 Ohio St.3d 608, 693 N.E.2d 219, 223–24 (1998) (discussing the "long-standing principle that annexation is to be encouraged").

Section 1926(b), even when interpreted to grant protection to Le–Ax, does not violate the Tenth Amendment. As a threshold matter, the Court finds that the prohibition against municipal encroachment reasonably advances the Congressional purpose of promoting rural water development and protecting federally indebted rural water associations. Second, § 1926(b) unambiguously sets forth the conditions that accompany the loans that it makes to rural water associations pursuant to § 1926(a). *Glenpool Util. Servs. Auth.,* 861 F.2d at 1215. Third, Ohio has voluntarily and knowingly accepted those conditions, as evidenced by the Ohio laws that authorize the creation of water districts and the contracting of such water districts with the Department of Agriculture. OHIO REV.CODE § 6119.06 (authorizing Ohio regional water districts to "[m]ake and enter into all contracts and agreements . . . necessary or incidental to the performance of its duties and the execution of its powers under Chapter 6119" and to receive and accept federal grants); *see Glenpool Util. Servs. Auth.,* 861 F.2d at 1215–16 (finding that Oklahoma had voluntarily and knowingly accepted the conditions of § 1926 when Oklahoma law had specified that rural water districts created pursuant to state statute were empowered to borrow

---

. . . provide for the . . . general Welfare of the

United States." U.S. CONST. art. I, § 8, cl. 1.

money and accept grants from the United States).

The Court finds significant that the statute that authorizes Ohio water districts to accept loans and grants from the federal government is the same statute that authorizes Ohio water districts to provide service within and without its territory. OHIO REV.CODE § 6119. The fact that these provisions appear within the same statute signifies to the Court that Ohio knowingly accepted the conditions that accompany the federal government's loans to rural water districts, even as applied to Le–Ax.

Fourth, the federal statute does not improperly interfere with state or municipal sovereignty because the limits it imposes are restricted in time. The protection granted to Le–Ax by the statute is limited, as it applies only as long as Le–Ax is indebted to the Department of Agriculture. *See Bear Creek Water Ass'n, Inc.,* 816 F.2d at 1061 (recognizing that § 1926(b) limits the city's authority to compete with a rural water district only while the federal debt is outstanding). The fact that Le–Ax may be indebted for a significant number of years does not make that period of time unlimited.

Finally, the federal statute does not improperly interfere with state or municipal sovereignty because the limits it imposes are restricted in scope. Ohio retains the general authority to control water service within the state. *See id.* (acknowledging that the city's governmental function was not disabled by § 1926(b) because the city retained the authority to regulate minimum standards of water service, and had the ability to collaborate with, or purchase facilities from, the protected rural water district). It is the Ohio legislature that authorizes the creation of water districts, the service area of water districts, and the ability of such water districts to obtain federal loans. If the legislature so chooses, it can amend its statute to limit the rights and duties of rural water associations like Le–Ax. Additionally, the protection granted to Le–Ax is not unlimited in geographic scope, as it applies only where the water district provides service or makes service available by virtue of its pipes in the ground.

Based on the foregoing, the Court finds that 7 U.S.C. § 1926(b), as written and as applied here, does not violate the Tenth Amendment to the United States Constitution.

## V. CONCLUSION

Based on the foregoing analysis, the Court hereby **GRANTS** Summary Judgment to the Plaintiff. The Court hereby **GRANTS** a Declaratory Judgment to the Plaintiff on the basis that the City of Athens' agreement to provide water service to the proposed University Estates development violates 7 U.S.C. § 1926(b), and **ENJOINS** the City of Athens from providing such service.

**IT IS SO ORDERED.**