

**FILED**

Apr 27 2017, 11:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT
VECTREN ENERGY

Robert E. Heidorn
P. Jason Stephenson
Vectren Corporation
Evansville, Indiana

Wayne C. Turner
Patrick A. Ziepolt
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA ENERGY ASSOCIATION

Brian J. Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA UTILITY
REGULATORY COMMISSION

Curtis T. Hill, Jr.
Attorney General of Indiana

David Lee Steiner
Deputy Attorney General
Indianapolis, Indiana

Beth E. Heline
General Counsel

Jeremy R. Comeau
Assistant General Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA OFFICE OF
UTILITY CONSUMER
COUNSELOR,

Randall C. Helmen
Lorraine Hitz-Bradley
Jeffrey M. Reed
Indianapolis, Indiana

ATTORNEYS FOR AMICUS
CURIAE
INDIANA INDUSTRIAL
ENERGY CONSUMERS, INC.

Todd A. Richardson
Jennifer W. Terry
Joseph P. Rompala
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Gas Company, Inc. and
Southern Indiana Gas & Electric
Company,

*Appellants-Petitioners,*

v.

Indiana Utility Regulatory
Commission, et al,

*Appellee-Statutory Parties.*

April 27, 2017

Court of Appeals Case No.
93A02-1604-EX-943

Appeal from the Indiana Utility
Regulatory Commission

The Honorable Loraine L.
Seyfried, Chief Administrative
Law Judge

The Honorable Carol A. Stephan,
Commissioner

Indiana Utility Regulatory
Commission Cause Nos.
44429-TDSIC-3
44430-TDSIC-3

**Pyle, Judge.**

## Statement of the Case

This case concerns the interpretation of INDIANA CODE § 8-1-39-1 *et seq,* the Transmission, Distribution, and Storage System Improvement Charges and Deferrals ("TDSIC") statute ("TDSIC statute"). Specifically, the parties dispute whether a utility may, once it has established a seven-year plan for its transmission, distribution, and storage system improvements under Section 10 of the TDSIC statute, update its seven-year plan by adding new projects under Section 9 of the TDSIC statute. Appellants/Plaintiffs, Indiana Gas Company, Inc. ("Vectren North") and Southern Indiana Gas & Electric Company

("Vectren South") (collectively, "Vectren"), filed a petition with the Appellee, Indiana Utility Regulatory Commission ("the Commission"), under Section 9 of the TDSIC statute, requesting to update their seven-year Section 10 TDSIC plan with additional projects. The Commission partially denied Vectren's petition, and now Vectren appeals the Commission's denial. The Indiana Office of Utility Consumer Counselor ("OUCC") is also an Appellee, and we will refer to the Commission and the OUCC collectively as "the Appellees."

[2] On appeal, Vectren argues that the Commission erred when it partially denied their petition because the Commission misinterpreted the TDSIC statute. They also argue that the Commission should be barred from denying their petition on the basis of res judicata. Because we conclude that the Commission did not misinterpret the TDSIC statute and the doctrine of res judicata does not apply, we affirm the Commission's decision.

[3] We affirm.

## Issues

1. Whether the Commission erred when it partially denied Vectren's petition to update its seven-year TDSIC plan.

2. Whether the Commission should be barred from denying Vectren's petition to add new projects under the doctrine of res judicata.

Traditionally, a utility's rates charged to customers are adjusted through periodic general rate cases. These can be "expensive, time consuming, and sometimes result in large, sudden rate hikes for customers." *NIPSCO Indus. Group v. N. Ind. Pub. Serv. Co.*, 31 N.E.3d 1, 4 (Ind. Ct. App. 2015). Another way to adjust rates is through a "tracker" proceeding, which is a cost-recovery proceeding that allows smaller increases in rates so that a utility can recover costs for specific projects between general rate case proceedings.[2] *Id.*

In 2013, the Legislature enacted the TDSIC statute, INDIANA CODE § 8-1-39-1 *et seq*, which allows a utility to petition for a tracker proceeding for new or replacement electric or gas transmission, distribution, or storage projects, and thereby recover its costs in a timelier manner than through a general rate case. Under Section 10 of the TDSIC statute ("Section 10"), a utility may create a seven-year plan for its predicted transmission, distribution, and storage improvements and may seek approval of that plan from the Commission. IND. CODE § 8-1-39-10. Following notice and a hearing on the petition, the Commission is required to issue an order that includes the following:

---

[1] We held an oral argument in this case on April 11, 2017 in the Indiana Court of Appeals courtroom. We thank counsel for their excellent preparation and presentation.

[2] The Appellees clarify in their brief that "[r]ate adjustment mechanisms (the statutory term) are commonly referred to as 'trackers,' as the approved rate changes track the costs of the approved projects." (Appellees' Br. 20).

(1) A finding of the best estimate of the cost of the eligible improvements included in the plan.

(2) A determination whether public convenience and necessity require or will require the eligible improvements included in the plan.

(3) A determination whether the estimated costs of the eligible improvements included in the plan are justified by incremental benefits attributable to the plan.

I.C. § 8-1-39-10(b). Section 10 provides that "[i]f the [C]ommission determines that the public utility's seven (7) year plan is reasonable, the [C]ommission shall approve the plan and designate the eligible transmission, distribution, and storage improvements included in the plan as eligible for TDSIC treatment." *Id.*

[6] Once the Commission has approved a utility's Section 10 seven-year plan, the utility may recover 80% of the capital expenditures and costs approved by the Commission, although it must wait to recover the remaining 20% during its next general rate case. During the seven years of the plan, the utility may petition to recover 80% of its costs or for an "update" of the plan under Section 9 of the TDSIC statute ("Section 9"). A utility's Section 9 petition must, in relevant part:

*        *        *

(2) include the public utility's seven (7) year plan for eligible transmission, distribution, and storage system improvements; and

(3) identify projected effects of the plan described in subdivision (2) on retail rates and charges.

I.C. § 8-1-39-9(a). The utility is also required to "update" its seven-year plan "with each petition the public utility files under [Section 9]." *Id*.

[7] Vectren North and Vectren South are two Indiana gas utilities that do business as Vectren Energy Delivery of Indiana and that provide Indiana consumers with natural gas utility services. The two utilities received approval for their seven-year TDSIC plans in 2013 in Cause Numbers 44429 and 44430, respectively. These causes were largely consolidated before the Commission and are completely consolidated on appeal.

[8] Vectren's original seven-year plan included project-by-project details for only the first year and contained cost estimates for years two through seven. In its order approving the plan, the Commission found that "the projects in Years 2 through 7 were presumed to be eligible improvements subject to further definition and specifics being provided in updates to the Plan." (App. Vol. 2 at 10). It approved an update process whereby Vectren would "move [its] upcoming year-specific projects into a work-order level of detail," each year, similar to the work-order level of detail it had provided for year one. (App. Vol. 2 at 62).

[9] Subsequently, the OUCC appealed the Commission's approval of Vectren's seven-year plan on grounds that are not relevant for the instant appeal. However, Vectren Industrial Group intervened in that appeal and argued that the Commission had erred in approving the seven-year plan because it lacked

sufficient detail. *See Ind. Office of Util. Consumer Counselor v. S. Ind. Gas & Elec. Co.*, No. 93A02-1409-EX-668 (Ind. Ct. App. June 11, 2015).

[10] In the meantime, while the appeal of Vectren's seven-year plan was pending, Vectren petitioned for its first update to the plan ("TDSIC Update-1") under Section 9 of the TDSIC statute. On January 14, 2015, the Commission approved the update, which included new projects that were not a part of Vectren's seven-year plan.

[11] Thereafter, this Court decided a case—*NIPSCO Industrial Group* ("*NIPSCO*")— in which we found that NIPSCO's seven-year plan, which was similar to Vectren's seven-year plan in the instant case, was not sufficient under the TDSIC statute. *NIPSCO Indus. Group*, 31 N.E.3d at 4. Specifically, NIPSCO, the utility at issue, had a seven-year plan that "provided sufficient detail of the plan for only the first of the seven years" and included "general categories of spending, separated primarily by function rather than specific projects in Years 2 through 7." *Id.* at 6. The Commission had approved the plan and, even though it had found that only year one had sufficient detail, established a "presumption of eligibility" for years two through seven. *Id.* at 4. NIPSCO was required to annually update the plan through an informal process. *Id.*

[12] The NIPSCO Industrial Group, which was a "group of some of NIPSCO's largest industrial customers," appealed the Commission's approval of NIPSCO's seven-year plan. *Id.* It argued that the Commission had erred by allowing NIPSCO to identify the proposed projects for only the first year of the

seven-year plan and by establishing a presumption of eligibility for years two through seven. *Id.* at 6. In response, NIPSCO argued that it needed some flexibility in its seven-year plan to deal with changing conditions. *See id.* at 8. This Court agreed with the NIPSCO Industrial Group, holding that:

> [T]he plan provided to the Commission simply did not contain enough detail for the Commission to determine whether NIPSCO's plan for years two through seven was "reasonable" or to determine a "best estimate of the cost" of the improvements [as required under Section 10 of the TDSIC statute]. We acknowledge the arguments on appeal that a utility needs some flexibility to deal with changing conditions. Clearly, NIPSCO requires some flexibility in completing the seven-year plan because some equipment may need to be replaced earlier or later than initially planned. Even the OUCC acknowledged that some flexibility is required . . . . The OUCC proposed that NIPSCO submit an updated plan annually "concurrent with its Fall TDSIC tracker filing" and that the parties [] have the opportunity to contest the revised plans. We believe that the legislature anticipated the necessity of flexibility when it enacted the updating process of [INDIANA CODE] § 8-1-39-9. The updating process does not, however, relieve the utility of providing an initial seven-year plan that meets the statutory requirements. Allowing for flexibility in a plan is not the same thing as not having a plan at all. We conclude that the Commission erred by approving NIPSCO's seven-year plan given its lack of detail regarding the projects for years two through seven.

*Id.* We also concluded that the Commission was not authorized to establish a presumption of eligibility in a seven-year TDSIC plan. *Id.* at 9.

[13] On April 1, 2015, a week before we issued our opinion in *NIPSCO*, Vectren filed its second petition for an update to its seven-year plan ("TDSIC Update-

2") under Section 9 of the TDSIC statute. However, after *NIPSCO* was handed down, Vectren "withdrew its testimony related to its TDSIC [p]rojects, thereby delaying consideration of the update" until its next filing. (App. Vol. 2 at 11). Vectren indicated that the delay would allow this Court to address Vectren Industrial Group's appeal of Vectren's seven-year plan, which we had not yet decided, and would allow it to "work with the OUCC on the level of project detail to be provided regarding its TDSIC [p]rojects" in light of *NIPSCO.* (App. Vol. 2 at 11).

[14] Meanwhile, the Vectren Industrial Group cited the *NIPSCO* decision in its pending appeal regarding Vectren's seven-year plan, and Vectren moved to strike that citation. Ultimately, this Court issued a memorandum opinion in that appeal on June 11, 2015. We concluded that Vectren Industrial Group's argument—that the Commission had erred by approving Vectren's seven-year plan because it lacked sufficient detail—was waived because no group had raised it before the Commission in the underlying proceedings. *See Ind. Office of Utility Consumer Counselor*, No. 93A02-1409-EX-668 at *1 n.1.

[15] Thereafter, on October 1, 2015, Vectren filed a third update petition ("TDSIC Update-3") requesting, in part, approval for several projects that it had not listed in its original seven-year plan. Among other new projects, Vectren South proposed to install automatic meter reading equipment for its gas-only customers. It estimated that 27,500 meters would be impacted by the new project and that the cost would be $2.76 million. Vectren North also proposed several new projects. One such new project was a $67.34 million transmission

system project Vectren North proposed for the Lafayette area. Vectren contended that the necessity of its proposed new projects could not have been predicted when it sought approval of the seven-year plan. The OUCC and the Commission did not oppose the need for, nor the cost of, the projects, but the Commission denied Vectren's petition for the updates on the premise that it did not have authority to approve projects that were not included in Vectren's original seven-year plan.

[16] Specifically, the Commission construed Sections 9 and 10 of the TDSIC statute together and concluded that:

> The Merriam-Webster online dictionary defines "update" as, "to change (something) by including the most recent information; to make (something) more modern; to give (someone) the most recent information about something." The "something" required to be updated in Section 9(a) is the utility's seven-year plan for eligible improvements that was approved as reasonable under Section 10. Although the TDSIC [s]tatute does not include a specific definition of a "seven-year plan," it is clear from a plain reading of Section 10(b) and [*NIPSCO*] that a "seven-year plan" consists of those projects that [] have been designated as eligible improvements based on the Commission's findings concerning cost estimates, public convenience and necessity, and incremental benefits. Therefore, any update must reflect changes that have occurred to those designated eligible improvements since the utility's last TDSIC filing. In addition, because our approval of the plan as reasonable was based on our determination of the best estimate of the cost of the eligible improvements, whether public convenience and necessity require the eligible improvements, and whether the estimated costs of the eligible improvements are justified by the incremental benefits, it seems reasonable that any update to the plan include changes to those factors we considered in approving the plan, i.e., changes

in an eligible improvement's cost estimate, necessity, and associated benefits. It may also include a request to approve a targeted economic development plan.

We find this plain reading of the term update [in Section 9] to be supported when looking at the TDSIC [s]tatute as a whole. If a utility were allowed to change or alter its seven-year plan in any manner and without regard to its approved contents, it would defeat the requirement in Section 10 that the Commission evaluate the plan in its entirety to determine whether it is reasonable, to make specific findings concerning the cost estimates and the public convenience and necessity of the proposed eligible improvements, and to determine whether the estimated costs of the proposed eligible improvements are justified by the incremental benefits associated with the plan (i.e., the list of identified projects). The [*NIPSCO* opinion] made a clear distinction between the scope of a Section 9 proceeding and that of a Section 10 proceeding. The Court of Appeals held that the Section 9 updating process could not relieve the utility from providing a seven-year plan with sufficient detail to satisfy the Section 10 requirements and allow for the Commission's designation of the eligible improvements. As construed by the Court of Appeals, it is a function of a Section 10 proceeding, not a Section 9 proceeding, to designate eligible improvements. This conclusion is consistent with the definition of eligible improvement in Section 2, which requires that they be either (1) "designated in the public utility's seven (7) year plan and approved by the [C]omission *under [S]ection 10 of this chapter* as eligible for TDSIC treatment" or (2) approved as a targeted economic development project.

In addition, the TDSIC [s]tatute is a capital tracker, not an expense tracker. An expense tracker, such as the gas cost adjustment under [INDIANA CODE] § 8-1-2-42(g), permits a utility, within defined limits, to track and reconcile a specified category of costs incurred for a particular period of time. A capital tracker, such as the TDSIC or a compliance project under

[INDIANA CODE § 8-1-8.4], involves regulatory pre-approval of a defined scope of capital expenditures that the utility is permitted to reflect in rates through periodic adjustments and review without filing a general rate case. The purpose of plan approval under Section 10 is to define the set of eligible improvements that are designated as eligible for TDSIC treatment under Section 9. This interpretation is also consistent with the timeframes allotted for the review of a utility's findings under Sections 9 and 10; Section 10 provides for a longer 210-day review, whereas Section 9 provides for a shorter 90-day review period.

(App. Vol. 2 at 13, 14) (footnotes omitted) (emphasis in original).

[17] The Commission also concluded that the TDSIC statute does not "lock[]" a utility into making a particular set of investments. (App. Vol. 2 at 14). It noted that, instead, Vectren "has a statutory obligation to provide safe and reliable service—an obligation that existed prior to the TDSIC [s]tatute." (App. Vol. 2 at 14). The TDSIC statute

simply altered the way in which a utility may seek cost recovery for satisfying that obligation . . . . Therefore, to the extent an investment is deemed appropriate to provide safe and reliable service, Vectren [] is expected to proceed whether tracker recovery under the TDSIC [s]tatute is available or not.

(App. Vol. 2 at 14).

[18] While it did not approve the projects that were not included in Vectren's seven-year plan, the Commission did approve projects that fell within *categories* of projects Vectren had listed in its original seven-year plan. For example, "Service Line Replacements and Gas Communication Equipment" were designated project categories in Vectren South's original seven-year plan. (App.

Vol. 2 at 15). In TDSIC Update-3, Vectren identified the number of service lines it planned to replace each year by service area and provided additional detail identifying the types and costs of projects within the category. The Commission approved these projects, determining that they were included in Vectren's original seven-year plan because they fell within a category included in the plan and contained sufficient detail.

[19] Vectren now appeals the Commission's partial denial of its petition to update its seven-year plan to include "new" projects. Indiana Energy Association has filed a "friend of the court" brief that aligns with Vectren, and Industrial Energy Consumers, Inc. has filed a "friend of the court" brief that aligns with the Appellees.

## Discussion

[20] On appeal, Vectren and the Appellees dispute whether: (1) the Section 9 "update process" of the TDSIC statute allows a utility to update its Section 10 seven-year plan to include new projects; and (2) the Commission was barred from denying Vectren's Section 9 update petition by the doctrine of res judicata since it had agreed to Vectren's update process.[3] We will discuss each of these issues in turn.

---

[3] Vectren also requests that we clarify whether, if it is not allowed to update its seven-year plan with new projects, it may file a replacement seven-year plan or an additional seven-year plan. However, this issue is not ripe as Vectren has not attempted to file a replacement or additional seven-year plan. *See Texas v. U.S.*, 523 U.S. 296, 300 (1998) (stating that a claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all"). Accordingly, we will not address

## 1. Section 9 Update Process

First, Vectren asserts that the Commission erred when it concluded that the TDSIC statute does not allow a utility to update its seven-year plan with new projects through the Section 9 update process.

The Legislature created the Commission primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the Legislature. *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009). The Commission's assignment is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana. *Id.* The Commission can exercise only power conferred upon it by statute. *Id.* Its authority also "'includes implicit powers necessary to effectuate the statutory regulatory scheme.'" *NIPSCO Indus. Group*, 31 N.E.3d at 5 (quoting *U.S. Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 795 (Ind. 2000)). Any doubts regarding the Commission's statutory authority must be resolved against the existence of such authority. *Id.*

On matters within its jurisdiction, the Commission enjoys wide discretion. *Id.* at 5-6. On appellate review, we first review the entire record to determine whether there is substantial evidence to support the Commission's findings of basic fact. *Id.* at 6. Next, we review ultimate facts, or mixed questions of fact

---

this issue. *See Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1001 n.3 (Ind. Ct. App. 2015) ("A court may not review an issue that is not ripe.").

and law, for their reasonableness, with the amount of deference owed depending on whether the issue falls or does not fall within the Commission's expertise. *Id.* Finally, we review legal propositions for their correctness. *Id.* Specifically, "'an agency action is always subject to review as contrary to law, but this constitutionally preserved review is limited to whether the Commission stayed within its jurisdiction and conformed to the statutory standards and legal principles involved in producing its decision, ruling, or order.'" *Id.* (quoting *U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 551 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*).

[24] The Commission's ruling was based on its plain reading of Section 10, regarding the establishment of a utility's seven-year plan, in conjunction with Section 9, regarding the updating of a utility's seven-year plan. First, it concluded that the plain reading of the word "update" in Section 9 indicated that the term applied to only the projects that were designated in Vectren's seven-year plan under Section 10. It cited the Merriam-Webster's Dictionary's definition of "update"—to "change (something) by including the most recent information; to make (something) more modern; to give (someone) the most recent information about something"—for the proposition that the "something" that a utility could change under Section 9 was a project designated and approved in its seven-year plan. (App. Vol. 2 at 13). The Commission concluded that this interpretation was supported by the statute as a whole, because "[i]f a utility were allowed to change or alter its seven-year plan in any manner and without regard to its approved contents, it would defeat the

requirement in Section 10 that the Commission evaluate the plan in its entirety." (App. Vol. 2 at 13).

[25] Vectren argues that the Commission misinterpreted the statute with respect to the plain meaning of the word "update." It asserts that the "something" a utility may change under Section 9 is the utility's seven-year plan, not its individually designated projects. In support of this interpretation, Vectren argues that the legislative intent in enacting the TDSIC statute was to provide a timelier process for utilities to recover their costs, and a broader application of the word "update" would support that intent by qualifying a wider spectrum of projects for timely cost recovery.

[26] Even if Vectren's interpretation were plausible, it has not shown that the Commission's interpretation was unreasonable. Although an agency's interpretation of a statute presents a question of law entitled to de novo review, the agency's interpretation is given "great weight." *Jay Classroom Teachers Ass'n v. Jay School Corp.*, 55 N.E.3d 813, 816 (Ind. 2016). If a court "determines that an agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's proposed interpretation." *Dev. Servs. Alts., Inc. v. Ind. Family and Social Servs. Admin.*, 915 N.E.2d 169, 181 (Ind. Ct. App. 2009), *trans. denied.* Even if we accept Vectren's argument that the Legislature's intent in enacting the TDSIC statute was to provide a timely method of cost recovery for utilities, the Legislature clearly did not intend this cost-recovery method to apply to all projects, or even to as many projects as possible, as Vectren seems to suggest. Section 9 specifies that utilities may

recover, at a maximum, only 80% of their costs. *See* I.C. § 8-1-39-9(a). In addition, Vectren has not alleged that the Legislature repealed the process utilities have for recovering their costs under a general rate case. Accordingly, it is clear that the Legislature intended for utilities to recover some of their costs through general rate cases rather than TDSIC update petitions.

[27] Further, the Commission's interpretation is consistent with the TDSIC statute as a whole. As the Commission noted, "[i]f a utility were allowed to change or alter its seven-year plan in any manner and without regard to its approved contents, it would defeat the requirement in Section 10 that the Commission evaluate the plan in its entirety." (App. Vol. 2 at 13). Vectren disagrees and argues that allowing alterations would not defeat the Section 10 requirement because the Commission must still evaluate a plan in its entirety under a Section 9 proceeding. Specifically, Vectren contends that the Commission must determine that a Section 9 petition satisfies the "requirements of this chapter" and that its "capital expenditures and TDSIC costs are reasonable" before it approves the petition. I.C. § 8-1-39-12(c)). Because Section 10 is included in "this chapter," Vectren contends that compliance with Section 10 is a component of the Section 9 petition review process.

[28] However, Vectren's argument proves the Commission's point. If, as Vectren argues, each Section 9 update were equivalent to a Section 10 review and included the evaluation of new projects within the context of an overall seven-year plan, the Legislature need not have separated Sections 9 and 10 into distinct sections. Because the Legislature did separate the sections, the

Commission's conclusion that Sections 9 and 10 contemplate distinct processes was reasonable. Moreover, as the Commission noted, this conclusion is consistent with our *NIPSCO* decision, which "made a clear distinction between the scope of a Section 9 proceeding and that of a Section 10 proceeding."[4] (App. Vol. 2 at 13).

[29] In addition, the Commission's interpretation that new projects may only be added through a Section 10 seven-year petition is consistent with the TDSIC statute's references to "eligible improvements." Section 10 specifies that a public utility may petition the Commission for approval of "the public utility's seven (7) year plan for *eligible* transmission, distribution, and storage *improvements*." I.C. § 8-1-39-10 (emphasis added). Also under Section 10, if the Commission approves the plan, it designates the "'eligible . . . improvements' included in the plan as eligible for TDSIC treatment." I.C. § 8-1-39-10. Section 2 of the TDSIC statute defines "eligible improvements" as:

> New or replacement electric or gas transmission, distribution, or storage utility projects that: . . . (3) either were: (A) *designated in the public utility's seven (7) year plan and approved by the [C]ommission under [S]ection 10 of this chapter as eligible for TDSIC treatment*; or (B) approved as a targeted economic development project under section 11 of this chapter.

---

[4] Vectren argues that the Commission erred by basing its argument on the *NIPSCO* decision because the *NIPSCO* decision concerned the establishment of a seven-year plan under Section 10, not the Section 9 update procedure. We agree with Vectren that *NIPSCO* did not concern the Section 9 update procedure, but we need not address Vectren's arguments because the Commission did not base its conclusion on our decision in *NIPSCO*. Instead, it is clear that the Commission merely cited the *NIPSCO* Court's distinction between "the scope of a Section 9 proceeding and that of a Section 10 proceeding." (App. Vol. 2 at 13).

I.C. § 8-1-39-2 (emphasis added). This definition requires that the Commission approve eligible improvements under either Section 10 or Section 11, not Section 9. Accordingly, the Commission's conclusion that new projects may not be added through a Section 9 petition is consistent with the TDSIC statute's treatment of "eligible improvements."

[30] Vectren contends that its interpretation that new projects may be added under Section 9 is not inconsistent with the TDSIC statute's treatment of eligible improvements. In support of this contention, Vectren reiterates its argument that a Section 10 analysis must be a component of a Section 9 update because a Section 9 update must satisfy the "requirements of [the] chapter." I.C. § 8-1-39-12(c)). Thus, "[f]inding that a plan must be approved under Section 10 and then updated under the requirements of Section 10 presents no conflict with the wording in Section 2." (Vectren's Br. 55). However, in making this argument, Vectren ignores the first part of the definition, which provides that eligible improvements be "designated in the utility's seven (7) year plan." *See* I.C. § 8-1-39-2. Even if Section 9 updates are evaluated under Section 10 criteria for reasonableness, they are not designated in the utility's seven-year plan. Also, as the Appellees note, "[t]here is no corresponding definition for eligible improvements that are approved in a Section 9 update proceeding," so the idea that a new project could be added to a seven-year plan has no basis in the language of the TDSIC statute. (Appellees' Br. 24).

[31] Because, as demonstrated above, the Commission's interpretation of the Section 9 update procedure precluding the addition of new projects was

consistent with the language of the TDSIC statute as a whole, we conclude that it was reasonable. Therefore, the Commission did not err, and we need not evaluate Vectren's alternative interpretation. *See Jay Classroom Teachers Ass'n*, 55 N.E.3d at 816 (quoting *West*, 54 N.E. 3d at 353) ("'[I]f the agency's interpretation is reasonable, we stop our analysis and need not move forward with any other proposed interpretation.'").

## 2. Res Judicata

[32] Alternatively, Vectren argues that even if the TDSIC statute does not contemplate that new project updates may be added through a Section 9 update petition, the Commission should have been barred from denying its updates by the doctrine of res judicata. This argument is premised on Vectren's contention that the Commission's ruling in the third update proceeding contradicted: (1) its original approval of Vectren's seven-year plan; (2) our decision to affirm the Commission's approval of the seven-year plan on appeal; and (3) the Commission's approval of TDSIC Update-1, which added new projects to the original seven-year plan. Specifically, the Commission's TDSIC Update-3 order did not allow Vectren to update its seven-year plan with new projects, even though the Commission had originally approved such an update process in Vectren's original seven-year plan.

[33] Vectren's argument falls under the "collateral estoppel" or "issue preclusion" branch of res judicata. "Collateral estoppel" is applicable when a particular issue is adjudicated and then is put into issue in a subsequent suit on a different

cause of action between the same parties or those in privity with them. *Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131, 135 (Ind. Ct. App. 1989), *trans. denied*, *reh'g denied*. Because the concept of "claims" and "causes of action" are less important in administrative proceedings, most problems of res judicata in administrative law involve collateral estoppel. *Id.* To determine whether an administrative decision should bar or estop subsequent litigation, the following criteria should be considered: (1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency; (2) whether the agency was acting in a judicial capacity; (3) whether both parties had a fair opportunity to litigate the issues; and (4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal. *Id.*

[34] Vectren has not presented argument on any of these four criteria, so we conclude that it has waived its res judicata claim. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ."); *GHPE Holdings LLC v. Huxley*, 69 N.E.3d 513, 520 (Ind. Ct. App. 2017) (holding argument was waived for failing to support arguments with cogent reasoning or citation to authority).

[35] Waiver notwithstanding, we do not find any merit in Vectren's contention. Although Vectren argues that the Commission's approval of its seven-year plan and its approval of TDSIC Update-1 collaterally estopped its denial of Vectren's

petition under TDSIC Update-3, Vectren acknowledges that the Commission justified its deviation from its prior orders by citing to INDIANA CODE § 8-1-2-72. This statutory provision grants the Commission the authority to "rescind, alter, or amend any order fixing any rate or rates, tolls, charges, or schedules, or any other order made by the Commission." I.C. § 8-1-2-72. Vectren's only response to this justification is:

> it is unclear exactly which authority it invokes for its departure from prior orders. . . . The authority that exists under this statute cannot apply to orders already ruled upon by the appellate courts. To find otherwise would remove the ability of the Court of Appeals to function *as an appellate court* over Commission matters.

(Vectren's Br. 64). Accordingly, Vectren's arguments all seem to derive from our decision to affirm Vectren's seven-year plan on appeal.

[36] However, it is notable that we did not address the details of Vectren's Section 10 seven-year plan—and the update process specified in the plan—on the merits on appeal. Instead, we held that the Vectren Industrial Group's argument regarding the details of the Section 10 plan was waived because none of the parties had raised it before the Commission. *See Ind. Office of Utility Consumer Counselor*, No. 93A02-1409-EX-668 at *1 n.1. We have previously held that "[c]ollateral estoppel does not extend to matters that were not expressly adjudicated or to matters that can be inferred from the prior adjudication only by argument." *MicroVote Gen. Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 197 (Ind. Ct. App. 2010). The primary consideration in the use of collateral estoppel is whether the party against whom the former adjudication is asserted

had "a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances." *Id.*

[37] On appeal, the Vectren Industrial Group did not raise the issue of whether a utility may add new projects under Section 9 when it updates its Section 10 seven-year plan. The Vectren Industrial Group argued only that Vectren's Section 10 plan was not sufficiently detailed. Because the issue of whether Vectren may update its plan with new projects was never expressly adjudicated, collateral estoppel cannot extend to that issue. Accordingly, we conclude that the Commission was not barred by res judicata.[5] *See id.*

[38] Affirmed.

Bradford, J., and Altice, J., concur.

---

[5] Vectren also argues that our previous decision on appeal became the "law of the case." The rule of "the law of the case" is distinct from res judicata because it is limited to the "'point or points considered and decided on the first appeal.'" *Evansville Am. Legion Home Ass'n v. White*, 230 N.E.2d 623, 632 (Ind. Ct. App. 1967) (quoting *Davis v. Krug*, 95 Ind. 1, 9 (Ind. 1884)), *cert. denied.* "Questions which might have been but were not considered or decided in the first and prior appeal do not become the law of the case. 'Only points decided become the law of the case.'" *Id.* (quoting *Wine v. Woods*, 63 N.E. 759, 760 (Ind. 1902)). Therefore, because the issue of Vectren's update process was never explicitly adjudicated, the rule of the law of the case does not apply here, either.