

FILED

Jun 20 2017, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Todd A. Richardson
Jennifer W. Terry
Joseph P. Rompala
Lewis Kappes, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Brian J. Paul
Daniel E. Pulliam
Faegre Baker Daniels LLP
Indianapolis, Indiana

Claudia J. Earls
Christopher C. Earle
NiSource Corporate Services-Legal
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NIPSCO Industrial Group, <br> *Appellant-Intervenor,* <br><br> v. <br><br> Northern Indiana Public Service Company, <br> *Appellee-Petitioner*. | June 20, 2017 <br><br> Court of Appeals Case No. <br> 93A02-1607-EX-1644 <br><br> Appeal from the <br> Indiana Utility Regulatory Commission <br><br> The Honorable <br> Lorraine L. Seyfried, <br> Chief Administrative Law Judge <br><br> The Honorable Carol A. Stephan, Chair <br> The Honorable James F. Huston, Commissioner <br> The Honorable David E. Ziegner, Commissioner <br><br> Cause No. <br> 44403-TDSIC-4 |

**Kirsch, Judge.**

[1] NIPSCO Industrial Group ("Industrial Group") appeals the decision of the Indiana Utility Regulatory Commission ("the Commission") that approved Northern Indiana Public Service Company's ("NIPSCO") petition for a plan update, pursuant to Indiana Code section 8-1-39-9, to its previously Commission-approved 7-year plan. Industrial Group raises two issues, which we consolidate and restate as: whether the Commission erred in approving NIPSCO's petition for a plan update, finding certain categories of improvements as eligible to be treated as transmission, distribution, and storage system improvement charges ("TDSIC") because the Industrial Group claims that the projects within the categories were not identified with enough specificity.

[2] We affirm.

## Facts and Procedural History

[3] NIPSCO is a public electric and gas utility that services customers in northern Indiana and owns, operates, manages, and controls plants and equipment in Indiana used for the generation, transmission, distribution, and furnishing of gas utility service to the public. NIPSCO provides gas utility service to more than 821,000 residential, commercial, and industrial customers in northern Indiana. Industrial Group is a group comprised of some of NIPSCO's largest industrial customers.

[4] The rates a utility charges to its customers are traditionally adjusted through periodic rate cases, which are expensive, time consuming, and comprehensive. Another way to set rates is through tracker proceedings, which allow smaller increases for specific projects and costs between general rate case proceedings. The General Assembly has authorized several trackers, including a fuel charge tracker, a tracker for qualified pollution control projects under construction, a tracker for federally mandated costs, and a tracker for clean energy projects. In 2013, the General Assembly enacted Indiana Code chapter 8-1-39, which allows a utility to petition for a tracker for certain proposed new or replacement electric or gas transmission, distribution, or storage projects. The statute is referred to as the "TDSIC" statute.

[5] Under the TDSIC statute, the utility seeks approval of a 7-year plan, pursuant to Indiana Code section 8-1-39-10 ("Section 10"), that designates improvements to transmission, distribution, and storage systems. If the Commission determines that the 7-year plan is reasonable, reflects the best estimate of the costs of the improvements, demonstrates that the improvements are required for public convenience and necessity, and shows that the eligible improvements are cost-justified, then the Commission approves the plan and designates the improvements as eligible for TDSIC treatment. Ind. Code § 8-1-39-10(b). After the 7-year plan is approved, periodic tracker proceedings may occur, pursuant to Indiana Code section 8-1-39-9 ("Section 9"), to allow rate adjustments for specific projects as they are completed. These petitions should include an update of the 7-year plan, and any costs that exceed the approved expenditures

and TDSIC costs require "specific justification by the public utility and specific approval by the [C]ommission before being authorized for recovery in customer rates." Ind. Code § 8-1-39-9(f).

[6]     On October 3, 2013, NIPSCO filed a petition under Section 10 seeking approval of its 7-year plan for its gas system, which included improvement projects to transmission, distribution, and storage systems. By order, the Commission approved the 7-year plan and found that NIPSCO's cost estimates for the 7-year plan were reasonable. Industrial Group appealed the Commission's order approving the 7-year plan, but on Industrial Group's own motion, the appeal was dismissed with prejudice on September 23, 2014.

[7]     On August 28, 2014, NIPSCO filed its first tracker petition for its gas system, which sought approval of updates to the 7-year plan, including actual and proposed capital expenditures and TDSIC costs that exceeded the amounts approved in the original 7-year plan. NIPSCO's petition projected the estimated capital costs for the 7-year plan to be $862.2 million, which was an increase of $149.1 million over the original plan. This tracker petition was approved by the Commission, including NIPSCO's proposed methodology for calculating the TDSIC adjustment.

[8]     NIPSCO filed its second tracker petition ("TDSIC-2") on February 27, 2015. Before the Commission issued an order on TDSIC-2, a panel of this court issued a decision in the appeal of NIPSCO's electric TDSIC case 7-year plan ("the Electric Decision"), in which the Commission's order was reversed in

part, affirmed in part, and remanded to the Commission. *See NIPSCO Indus. Grp. v. N. Ind. Pub. Serv. Co.*, 31 N.E.3d 1 (Ind. Ct. App. 2015). This court held that NIPSCO's 7-year plan for its electric TDSIC lacked sufficient detail for the Commission to determine whether "NIPSCO's plan for years two through seven was 'reasonable' or to determine a 'best estimate of the cost' of the improvements." *Id*. at 8. The court also found that it was impermissible for the Commission to establish a "'presumption of eligibility' regarding the undefined projects for years two through seven" because such a presumption "inappropriately shifts the burden of showing a project's eligibility for TDSIC treatment from NIPSCO." *Id*. at 9. After the Electric Decision was issued, because it impacted the TDSIC filings in its gas systems, NIPSCO moved to dismiss its TDSIC-2 petition in its gas system with the understanding that it would request to recover the expenditures and costs covered in TDSIC-2 through its third tracker petition ("TDSIC-3"), and the trial court dismissed TDSIC-2 without prejudice.

[9]    On August 31, 2015, NIPSCO filed its TDSIC-3, which again sought approval of its updated 7-year plan and included actual and proposed estimated capital expenditures and TDSIC costs that exceeded those amounts approved in TDSIC-1. In TDSIC-3, NIPSCO sought to provide more specificity with respect to the projects contained in the project groups in response to the Electric Decision. In its TDSIC-3 order approving the petition, the Commission found that, based on the Electric Decision in *Nipsco Industrial Group*, approval of a 7-year plan requires a finding that the proposed projects in the plan contain

enough detail for the Commission to determine that the projects meet the definition of eligible improvements. *Appellant's App*. at 159. The Commission also recognized that TDSIC-3 presented a "unique situation" because although the Commission had previously approved NIPSCO's 7-year plan, the Electric Decision showed that such approval was not proper under the statute. *Id*. Thus, the Commission found that, while it was making a determination under Section 9, it was required to confirm that NIPSCO had shown sufficient information in its petition to find the projects contained in TDSIC-3 to be eligible improvements. *Id*.

[10] In its order, the Commission also interpreted the statutory term "update" to require NIPSCO to explain and justify changes to the cost estimates for eligible improvements that the Commission had previously approved. *Id*. at 160. The Commission found that, in light of the Electric Decision, it had to reevaluate its presumption that projects proposed for years three through seven of the 7-year plan could be presumed eligible, and it determined that NIPSCO had presented sufficient detail regarding project descriptions and cost estimates for those years concerning a majority of the projects and projects groups. *Id*. at 163. In TDSIC-3, NIPSCO sought to provide more specificity with respect to the projects contained in the project groups in response to the Electric Decision. In the TDSIC-3 order, the Commission found that NIPSCO had provided ascertainable planning criteria for identifying and selecting specific improvements that NIPSCO will undertake in the project groups. *Id*. at 164. The Commission also determined that NIPSCO had provided sufficient detail

and explanation for the changes in estimated cost of the eligible improvements included in the updated 7-year plan, had sufficiently demonstrated that public convenience and necessity required or would require the eligible improvements, and had shown that the incremental benefits of the plan justified the costs. *Id*. at 170-72. The TDSIC-3 order approved the use of "project groups," which included some "identified" projects and other "yet to be identified" projects and found that NIPSCO "provided ascertainable planning criteria for identifying and selecting the specific improvements that it will undertake in these project groups." *Id*. at 163-64. Industrial Group did not appeal the TDSIC-3 order.

[11] NIPSCO filed its fourth tracker petition ("TDSIC-4") on February 29, 2016, which was before the Commission issued its order on the TDSIC-3 petition. In the TDSIC-4 petition, NIPSCO sought approval of an updated 7-year plan, which again included actual and proposed estimated capital expenditures and TDSIC costs that exceeded the amounts included in the TDSIC-3 petition. The TDSIC-4 petition provided greater detail than the previous petitions, including project estimates, summary of unit cost estimates, multiple unit project lists and supporting documentation, and project change requests. *Id*. at 8.

[12] The updated plan included changes made to projects slated for 2015 and 2016 and updated actual costs associated with projects across the entire plan. Specifically, the updated 7-year plan included different types of projects in various categories with both single unit and multiple unit projects. The multiple unit projects were described generally as a category of smaller projects that NIPSCO cannot anticipate exactly. *Tr*. at 25. As an example, NIPSCO

has thousands of pipes that are annually inspected, and when leaks are discovered, they may need unexpected replacement. *Id*. Although it is not known which exact projects will need replacement, based on history, it is known that a certain percentage of the projects will fail each year. *Id*. The multiple unit projects were listed in three ways: (1) a specified asset list, which included the specific assets to be addressed each year; (2) a list of inspection and remediation projects; and (3) other projects that were prioritized through alternative means. *Appellant's App*. at 17. An asset register was included as an appendix, which listed all projects that were subject to inspection and could be addressed in the next few years. *Tr*. at 48. The list of inspection and remediation projects were prioritized based on United States Department of Transportation ("DOT")-mandated annual inspections. *Appellant's App*. at 17. Based on the results of an inspection, NIPSCO would schedule actions to mitigate risk, which could include replacement. *Id*. TDSIC-4 contained greater detail than TDSIC-3 in its description of the project groups and was consistent with, and more detailed than, the ascertainable planning criteria that had been previously approved by the Commission in TDSIC-3. *Non-Confidential Ex. Vol. II* at 89-90.

[13] The Commission issued an order approving the TDSIC-4 petition on June 22, 2016. In the TDSIC-4 order, the Commission reasoned that, because the TDSIC statute does not discuss what may be included in a Section 9 update and what review was required, it would follow its findings in TDSIC-3 that Section 9 updates "should include a discussion of any changes in an eligible

improvement's best estimate of cost, necessity, and associated incremental benefits upon which the Commission based its determination to approve [the] proposed Plan as reasonable." *Appellant's App*. at 31. The Commission acknowledged that the updated plan reclassified and identified additional projects that fit into the project groups that had been approved in TDSIC-3 as having sufficiently ascertainable planning criteria. *Id*. at 33. The Commission determined that NIPSCO's project groups and multiple unit project categories were supported by sufficient ascertainable planning criteria for identifying and selecting the specific improvements to be undertaken and the reclassification and further identification of projects or asset replacements within the project groups was reasonable and consistent with the TDSIC-3 order. *Id*. at 33-34. In the TDSIC-4 order, the Commission approved the updated 7-year plan and the cost increases contained in the petition. Industrial Group now appeals.

## Discussion and Decision

[14] Industrial Group argues that the Commission erred in approving NIPSCO's TDSIC-4 petition. Industrial Group contends that the Commission erroneously approved the multiple unit categories in NIPSCO's updated 7-year plan because the improvements were not identified with particularity and because NIPSCO sought to identify specific projects year by year through tracker updates pursuant to Section 9 instead of identifying the projects in the 7-year plan. Industrial Group also claims that the Commission incorrectly granted a designation of eligibility to the multiple unit project categories, even though the specific improvements in these categories would not be identified until later

filings under Section 9. Industrial Group further asserts that the Commission's order, which approved a $20 million increase in costs, erroneously allowed NIPSCO to expand the scope of its 7-year plan to add projects that were not identified in the original 7-year plan filed pursuant to Section 10.

[15] The Commission was created by the General Assembly primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature. *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009); Ind. Code § 8-1-1-5. The Commission's assignment is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana. *Nipsco Indus. Grp.*, 31 N.E.3d at 5. The Commission only can exercise power conferred upon it by statute. *Id.* "Its authority also 'includes implicit powers necessary to effectuate the statutory regulatory scheme.'" *Id.* (quoting *United States Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 795 (Ind. 2000)). Any doubts regarding the Commission's statutory authority must be resolved against the existence of such authority. *U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 550 (Ind. Ct. App. 2011), *trans. denied*.

[16] An order of the Commission is subject to appellate review to determine whether it is supported by specific findings of fact and by sufficient evidence, as well as to determine whether the order is contrary to law. *Nipsco Indus. Grp.*, 31 N.E.3d at 5. On matters within its jurisdiction, the Commission enjoys wide discretion. *Id.* at 5-6. The Commission's findings and decision will not be overridden just because this court might reach a contrary opinion on the same evidence. *Id.* at

6. On appeal, we first review the entire record to determine whether there is substantial evidence to support the Commission's findings of basic fact. *U.S. Steel Corp.*, 951 N.E.2d at 551. Next, we review ultimate facts, or mixed questions of fact and law, for their reasonableness with the amount of deference owed depending on whether the issue falls or does not fall within the Commission's expertise. *Id*. Finally, legal propositions are reviewed for their correctness. *Id*. More precisely, "an agency action is always subject to review as contrary to law, but this constitutionally preserved review is limited to whether the Commission stayed within its jurisdiction and conformed to the statutory standards and legal principles involved in producing its decision, ruling, or order." *Id*.

[17] Under Section 10, a utility shall petition the Commission for approval of its 7-year plan for eligible transmission, distribution, and storage improvements. Additionally, under Section 10, if the Commission approves the 7-year plan, it designates the eligible improvements included in the 7-year plan as eligible for TDSIC treatment. Ind. Code § 8-1-39-10. Indiana Code section 8-1-39-2 states that eligible transmission, distribution, and storage system improvements are defined as:

> new or replacement electric or gas transmission, distribution, or storage utility projects that . . . either were (A) designated in the public utility's seven (7) year plan and approved by the [C]omission under [S]ection 10 of this chapter as eligible for TDSIC treatment; or (B) approved as a targeted economic development project under section 11 of this chapter.

Ind. Code § 8-1-39-2(3). Therefore, under Indiana Code section 8-2-39-2(3), if a project was not designated in the utility's 7-year plan and approved under section 10, or approved under Section 11, then the project is not an eligible improvement for purposes of TDSIC rate treatment.

[18] In *Nipsco Industrial Group*, 31 N.E.3d 1, a panel of this court examined NIPSCO's 7-year electric plan to ascertain if it identified proposed projects for the projected seven years with sufficient specificity. After reviewing the plan, the court found that NIPSCO provided sufficient details for the projects for year one of the plan, including the type of improvement, reason for the improvement, the project title and location, and a project cost; however, the same detailed information was not included for projects in years two through seven, and only expected annual total spends for major project categories were provided. 31 N.E.3d at 7. This court concluded that the Commission erred in approving NIPSCO's 7-year electric plan because the plan lacked sufficient detail for the Commission to determine whether "NIPSCO's plan for years two through seven was 'reasonable' or to determine a 'best estimate of the cost' of the improvements," as is the standard required by Indiana Code section 8-1-39-10(b). *Id*. at 8. Although the court acknowledged that NIPSCO required flexibility in creating its 7-year plan as some equipment may require replacement earlier or later than originally planned, it believed that this flexibility was anticipated by the legislature when it enacted the updating process contained in Section 9. *Id*. The court cautioned that the updating process did not relieve a utility from its obligation to provide an initial 7-year

plan that met the statutory requirements. *Id*. Additionally, the court found that it was impermissible for the Commission to establish a "'presumption of eligibility' regarding the undefined projects for years two through seven" because such a presumption "inappropriately shifts the burden of showing a project's eligibility for TDSIC treatment from NIPSCO to other intervening parties." *Id*. at 9.

[19]  Section 9 requires that the utility update its 7-year plan with each tracker petition it files with the Commission. Ind. Code § 8-1-39-9(a). In *Nipsco Industrial Group*, this court concluded that the updating process under Section 9 allows for flexibility in the writing of a 7-year plan as with each petition under Section 9, a utility must submit an updated plan. 31 N.E.3d at 8. Although the term "update" is not defined in Section 9, in its TDSIC-3 order, the Commission interpreted the statutory term "update" to require a showing of changes that have occurred to the designated eligible improvements contained in the 7-year plan since the last TDSIC filing. *Appellant's App*. at 160. The Commission also found that an update under Section 9 should include changes to the factors considered in approving the plan, *i.e.*, changes in an eligible improvement's cost estimate, necessity, and associated benefits. *Id*. This interpretation discusses changes to previously-approved improvements contained in the previous 7-year plan, but does not contemplate new improvements or projects not included in the previously-approved 7-year plan.

[20]  Recently, a panel of this court decided *Indiana Gas Co. v. Indiana Utility Regulatory Commission*, __ N.E.3d __, No. 93A02-1604-EX-943 (Ind. Ct. App.

Apr. 27, 2017), in which Vectren appealed the Commission's order that partially denied Vectren's petition to update its 7-year plan under Section 9. The Commission denied the petition as to new projects that had not been previously listed and approved in the original 7-year plan, reasoning that it did not have the authority to approve projects that were not included in the original 7-year plan. *Id*. at *4 __. In denying the petition as to new projects, the Commission found that a plain reading of the term update in Section 9 indicated that the term only applied to projects that had been designated in the original 7-year plan under Section 10. *Id*. Our court affirmed the Commission's denial, concluding that the Commission's interpretation that the Section 9 updating procedure precluded the addition of new projects was consistent with the language of the TDSIC statute referring to eligible improvements because, under the statute, an eligible improvement is a project that was designated in the original 7-year plan and approved by the Commission under Section 10. *Id*. at *6__. Therefore, because there is not a corresponding definition of eligible improvements that are approved in a Section 9 update, there is no basis under the TDSIC statute for a new project to be added to an updated 7-year plan, and this court held that the Commission did not err in denying the Section 9 update as to the addition of new projects. *Id*. at *8 __. Based on the holding in *Indiana Gas* and on the Commission's interpretation of the word update in TDSIC-3, we agree with the interpretation that an update under Section 9 should include changes to the cost estimates for previously-approved improvements in the 7-year plan under Section 10, but not new or previously-unknown improvements.

[21]    Updates under Section 9 should not include new projects and should merely include changes to the previously-approved 7-year plan. However, the present case presents a "unique situation" because, although the Commission had previously approved NIPSCO's original 7-year plan, the Electric Decision determined that such approval was not proper under the TDSIC statute. Therefore, the Commission found in its TDSIC-3 order that, while it was making a determination under Section 9, it was required to confirm that NIPSCO had shown sufficient information in its petition to find the projects contained in TDSIC-3 to be eligible improvements. *Appellant's App.* at 159. Thus, we conclude that, in this unique situation where the original 7-year plan was approved, but such approval was later shown to be in error, the updated 7-year plan in TDISC-3, which was the first tracker proceeding after the Electric Decision, represented the 7-year plan to which the Commission was required to look when determining if the updated 7-year plan in TDSIC-4 was correct.

[22]    NIPSCO initially filed its petition under Section 10 seeking approval of its 7-year plan for its gas system on October 3, 2013. The Commission approved the 7-year plan and found that NIPSCO's cost estimates for the 7-year plan were reasonable, and that determination was never appealed. On August 28, 2014, NIPSCO filed its first tracker petition, and the petition was approved by the Commission, including NIPSCO's proposed methodology for calculating the TDSIC adjustment. NIPSCO filed its TDSIC-2, which was subsequently dismissed in light of the Electric Decision with the understanding that NIPSCO

would request to recover the expenditures and costs covered in TDSIC-2 through its petition in TDSIC-3.

[23] On August 31, 2015, NIPSCO filed its TDSIC-3, which again sought approval of its updated 7-year plan, and in its first order subsequent to the Electric Decision, the Commission approved NIPSCO's TDSIC-3. Based on the Electric Decision, the Commission reevaluated its presumption that projects proposed for years three through seven of the 7-year plan could be presumed eligible and determined that NIPSCO, in its TDSIC-3, had presented sufficient detail regarding project descriptions and cost estimates for those years concerning a majority of the projects and projects groups. *Appellant's App*. at 163. In TDSIC-3, NIPSCO sought to provide more specificity with respect to the projects contained in the project groups in response to the Electric Decision. In the TDSIC-3 order, the Commission approved the use of "project groups," which included some "identified" projects and other "yet to be identified" projects and found that NIPSCO "provided ascertainable planning criteria for identifying and selecting the specific improvements that it will undertake in these project groups." *Id*. at 163-64. The Commission also determined that NIPSCO had provided sufficient detail and explanation for the changes in estimated cost of the eligible improvements included in the updated 7-year plan, had sufficiently demonstrated that public convenience and necessity required or would require the eligible improvements, and had shown that the incremental benefits of the plan justified the costs. *Id*. at 170-72. Industrial Group did not appeal the TDSIC-3 order.

[24]     NIPSCO then filed its TDSIC-4 on February 29, 2016 and sought approval of its updated 7-year plan, which again included actual and proposed estimated capital expenditures and TDSIC costs that exceeded the amounts included in the TDSIC-3 petition. The TDSIC-4 petition provided greater detail than the previous petitions, including project estimates, summary of unit cost estimates, multiple unit project lists and supporting documentation, and project change requests. *Id*. at 8.

[25]     In TDSIC-3, the Commission approved of the ascertainable planning criteria that NIPSCO utilized to identify the improvements projects that were included in TDSIC-4. Specifically, for multiple unit projects in the categories of "inspect and mitigate" and "storage," NIPSCO stated that asset replacements are planned and prioritized based on DOT-mandated annual inspections and that if a deficiency is identified through these inspections, federal regulations require NIPSCO to reduce the risk presented by the deficiency. *Id*. at 164. NIPSCO also identified specific work to be done and prioritized it based on a preset list of planned replacements through 2020. *Id*. at 33. In the category of "system deliverability," NIPSCO utilizes several planning criteria to plan for adequate system deliverability and to identify and evaluate projects to accommodate customer demands and delivery requirements. *Non-Confidential Ex. Vol. I* at 92. The criteria include periodic field measurements and natural gas modeling and analysis software to perform system performance assessments and look into alternate operating scenarios. *Id*. The gas system models analyze and predict customer demand and pressure delivery requirements. *Id*. Projects are selected

when field measurements of pressure, flow rates, ambient temperatures, and gas system modeling indicate that service to customers may be at risk. *Appellant's App*. at 163-64.

[26] The challenged multiple unit projects at issue here contain both specified and unspecified projects. These multiple unit projects are determined by utilizing the ascertainable planning criteria that was introduced and approved previously in TDSIC-3. Therefore, any projects utilizing the ascertainable planning criteria approved of in TDSIC-3 are not new projects because the multiple unit project categories and the criteria utilized were designated and approved in the 7-year plan contained in the TDSIC-3 petition. As long as the future projects contained in Section 9 updates are determined by utilizing the ascertainable planning criteria from TDSIC-3, the projects should be considered eligible improvements and may be included in the updates. However, to the extent that the projects contained in the updates are new or are not determined using the approved ascertainable planning criteria, they will be considered new projects and cannot be included in a Section 9 update. Likewise, it would be improper for a Section 9 update to include new criteria under which projects could be determined.[1]

---

[1] However, we do note that in its TDSIC-4 order, the Commission found that NIPSCO should work with the Industrial Group to further delineate the criteria that NIPSCO uses to ensure that the parties "have a sufficient understanding of the information used to evaluate whether a particular project satisfies the planning criteria described by NIPSCO." *Appellant's App*. at 34. Therefore, to the extent that the planning criteria in future plan updates changes to meet this directive, it will not be considered new criteria.

[27] We, therefore, conclude that the Commission did not err in its approval of NIPSCO's TDSIC-4 update. The Commission properly approved NIPSCO's updated 7-year plan because the improvements included in the update were not new projects as they were chosen by utilizing the ascertainable planning criteria previously approved by the Commission and contained in NIPSCO's 7-year plan. We also do not find that the Commission erroneously granted a designation of eligibility to the multiple unit project categories, because, although the specific improvements in the categories would not be identified until later filings, the improvements were not presumed to be eligible for TDSIC treatment, but instead, would be selected by utilizing the ascertainable planning criteria that had been previously approved by the Commission. Because we find that the improvements included in TDSIC-4 were properly included in the TDSIC-4 plan update, we affirm the Commission's order.

[28] Affirmed.

Robb, J., concurs.

Barnes, J., dissents with separate opinion.

| | |
|---|---|
| NIPSCO Industrial Group,<br>*Appellant-Intervenor,*<br><br>v.<br><br>Northern Indiana Public Service Company,<br>*Appellee-Petitioner.* | Court of Appeals Case No.<br>93A02-1607-EX-1644 |

**Barnes, Judge, dissenting.**

I respectfully dissent.  Given the outline and structure articulated in *NIPSCO Industrial Group v. Northern Indiana Public Service Co.*, 31 N.E.3d 1 (Ind. Ct. App. 2015), I see no basic difference here.  The "plan" that NIPSCO says it has for the future and the "update" it says it needs run afoul, in my opinion, of Indiana Code Chapter 8-1-39, the TDSIC statute.

[30] We recognized in *NIPSCO Indus. Group* that the "legislature anticipated the necessity of flexibility when it enacted the updating process of Indiana Code Section 8-1-39-9." *NIPSCO Indus. Group*, 31 N.E.3d at 8. "Allowing for flexibility in a plan is not the same thing as not having a plan at all." *Id.* Here, NIPSCO's inclusion of broad categories of unspecified "multiple unit projects" does not comply with the statutory requirements. Allowing the utility to include broad categories of unspecified projects defeats the purpose of having a "plan."

[31] It is also important to note that, even if NIPSCO does not receive rate increases for a project through the TDSIC process, NIPSCO still may be reimbursed for unexpected issues in the way it did before TDSIC was enacted through general rate making cases. The TDSIC statute requires a specific plan, and it was not designed to deal with those unexpected issues. Rather, it was intended for planned projects. Of course, those projects might cost more than projected, and the annual "update" provisions allow the utility to address those issues.

[32] No one expects NIPSCO to anticipate with pinpoint clarity what its needs and requirements may be years in the future. What can and should be expected, though, is that there be an amount of specificity in anticipated projects and needs and that the utility simply not get carte blanche to "update" its plan while exploring a rate increase. I understand that any utility, and NIPSCO in particular, has a right to enjoy a profit. I have no problem with that. I do have a problem with the overall vagueness and almost sleight of hand NIPSCO is using to justify the TDSIC rate increase.